Page 78

Segen

1
2  letter, I can't recall what happened that
3  day or during that period of time.
4      Q.  Was anything going on particularly
5  in your life in late June or early July of
6  2002?
7      A.  Not that I can recall.
8      Q.  You weren't getting married,
9  because you told me you are not married.
10     A.  Well, I could have been getting
11 married and just fallen apart, but no,
12 that didn't happen (smiling).
13     Q.  So you just have no knowledge,
14 as you sit here today, under oath, you
15 simply can't tell me when you learned the
16 details of the transactions (indicating)
17 that are set forth in this letter; is that
18 correct?
19     A.  I can't tell you the date, no.
20     Q.  And you can't tell me the
21 approximate date.
22     A.  Correct.
23     Q.  But you know it would have been
24 July 5th, 2002 or before because the
25 letter had the details.

TSG Reporting - Worldwide   212-702-9580

Page 79

Segen

1
2      A.  I believe so, yes.
3      Q.  Okay.  And can you tell me when
4  your counsel learned the details of these
5  transactions?
6      A.  I have no idea.
7      Q.  You just don't know.
8      A.  I don't know, have no way of
9  knowing.
10     Q.  That would be something that
11 only your counsel would know?
12     A.  I -- as far as I know, he's the
13 only one who would know that.
14     Q.  When you say "he" -- "he", you
15 are talking about Mr. Ostrager.
16     A.  And Mr. Wexler.
17     Q.  Okay.
18     A.  Whoever became aware of it.
19     Q.  But you would agree with me that
20 it had to be before July 5th, 2002 because
21 there is no way to put this detail in the
22 letter if you didn't have the information.
23         MR. OSTRAGER:  I would object
24 insofar you are asking the witness to
25 speculate.  He can testify as to his

TSG Reporting - Worldwide   212-702-9580

Page 80

Segen

1
2  personal knowledge.
3         MR. DOKSON:  Objection noted.
4      Q.  You would agree with me.
5      A.  Independently, I would agree
6  with you, but I have no way of knowing
7  what they knew and when they knew it.  If
8  I remember the date I might be able to
9  hazard a guess, but I can't even do that.
10     Q.  But, intellectually, would you
11 agree with me it couldn't be after July
12 5th, 2002.
13     A.  That they first learned about
14 it?
15     Q.  Yes.
16     A.  It would seem unlikely.
17     Q.  Okay.  Do you know what a "13(d)"
18 is?
19     A.  No.
20     Q.  Do you know what a "Form 4" is?
21     A.  No.
22     Q.  Okay.  Do you ever review SEC
23 filings?
24     A.  Never.
25     Q.  "Never."  So you wouldn't have

TSG Reporting - Worldwide   212-702-9580

Page 81

Segen

1
2  reviewed a 13(d) or a Form 4 or anything
3  else to have learned the details
4  (indicating) of these transactions.
5      A.  No.
6      Q.  Is that correct?  And if --
7  okay, strike that.
8         Mr. Segen, how many shares of
9  Intraware stock did you own in July 2002
10 when Priddy Number 5, the demand letter,
11 was sent?
12     A.  I believe ten years.
13     Q.  And how much did you pay for
14 those ten shares?
15     A.  I don't remember.
16     Q.  Is that in the document in front
17 of you?
18     A.  According to this document,
19 thirty-eight dollars fifty-five.
20     Q.  38.55?
21     A.  Yeah.
22     Q.  How much commission did you pay?
23         With Schwab, probably very
24 little.
25     A.  29.95.

TSG Reporting - Worldwide   212-702-9580

Page 82

Segen

1
2    Q.   So, you invested under -- a
3  little over $400, including the initial
4  purchase price of the shares and the
5  commission for these ten shares; is that
6  right?
7        A.   I guess so.
8    Q.   Do you still own those ten
9  shares?
10       A.   If I remember correctly, there
11 was a reverse split of ten for one, I
12 believe I only own one share now.
13   Q.   Do you know what that share is
14 worth now?
15       A.   Uh -- less than what I paid for
16 it.
17   Q.   You told me you are a
18 sophisticated investor; is that correct?
19 Experienced or sophisticated?
20       A.   Yes.
21   Q.   I'm sorry, when did you purchase
22 your shares?
23       A.   According to this document, the
24 trade date was July 5th, 2002.
25   Q.   And there was absolutely no

Page 83

Segen

1
2  motivation, when you purchased these
3  shares, that had anything to do with a
4  16(b) short-swing profit case?
5        A.   Correct.
6    Q.   Is that your testimony under
7  oath, sir?
8        A.   Yes.
9    Q.   As an officer of the court and a
10 member of the Bar, you are telling us that
11 you just happened to purchase these shares
12 on the same date (indicating) that the
13 demand letter was sent.
14       I remind you, you are under oath,
15 sir.
16       A.   (Pause.)
17       It had nothing to do with my
18 purchase.
19   Q.   Okay.  Mr. Segen, do you
20 routinely make investment purchases of
21 publicly-traded securities in amounts less
22 than $400?
23       A.   I do it at times, yes.  I
24 wouldn't say regularly, but I do it at
25 times.

Page 84

Segen

1
2        That's not my intention at the
3  time of doing it, however, but I put in a
4  trade for a small number of shares on a
5  thinly-traded stock at a low price, and I
6  watch to see how it's filled.  And if it's
7  filled in a way that makes me believe that
8  it's going up, then I will buy more.  If
9  it's filled in a way that makes me believe
10 that it's not -- that it's going to go
11 down, I don't buy anymore.
12   Q.   Did anybody recommend to you --
13 I'm sorry, strike that.
14       What were the factors that went
15 into your decision to purchase Intraware
16 stock on July 5th, 2002?
17       A.   I really can't recall the
18 factors about this specific stock.
19   Q.   Did anyone advise you to
20 purchase this stock?
21       A.   Perhaps, but I don't remember.
22   Q.   You said you sometimes used
23 advisors.  Who were your advisors?
24       A.   Various members of my team at
25 Schwab.

Page 85

Segen

1
2    Q.   What are their names?
3        A.   I don't even -- some -- I don't
4  know their names.
5    Q.   Which office of Schwab do you --
6        A.   I have no idea where my calls
7  go.  I believe they go to -- I believe
8  most of them are picked up in Iowa, but I
9  really don't know, you know, where the
10 brokers are.  It's just sort of whoever
11 you get.  They have a vast array of brokers,
12 and it's whoever picks up.
13   Q.   Well, let me tell you something,
14 Mr. Segen, I am going to take the
15 deposition of somebody at Schwab to find
16 out if they recommended this, if anybody
17 recommended this stock to you, because I
18 have to tell you, sir, that I don't find
19 your testimony to be credible, and that's
20 the only way --
21       MR. OSTRAGER:  I object.  You
22 are here to ask questions, we are
23 here to respond.  You can make
24 whatever statements you like off the
25 record.

Page 86

Segen

Q. So --

MR. OSTRAGER: I don't want you to be harassing this witness.

Q. So my question to you is, do you know the name of any advisor you have ever dealt with at Schwab.

A. Of anyone that I have ever dealt with at Schwab?

Q. Yes.

A. Yes.

Q. Okay, tell me the names of the people you have dealt with at Schwab.

A. I know a man named Fraiteg.

Q. Spell it.

A. I do not know how to spell it.

Q. F-R-A-I-T-E-G?

A. That's what I would think.

Q. You just call a number and you would get Mr. Fraiteg?

A. I call a number and I may get Fraiteg. It's a general number.

Q. What's your account number at Schwab, please?

Is it shown on the document that

TSG Reporting - Worldwide   212-702-9580

---

Page 87

Segen

I am going to get?

A. (Pause.)

I don't believe it is.

Q. May I see the document, please, sir?

A. (Handing document to Mr. Dokson.)

Q. Yes, it shows account number 79978388.

Is that your account number at Schwab?

A. Uh -- yes.

Q. Do you have more than one account with Schwab?

A. Yes.

Q. But this is the account in which the Intraware stock was bought.

A. Yes.

Q. And in which it's still held.

A. Correct.

Q. And you don't recall whether or not someone on your team at Schwab recommended to you the purchase of Intraware in July of 2002.

A. Don't recall.

TSG Reporting - Worldwide   212-702-9580

---

Page 88

Segen

Q. Do you recall doing any independent research on Intraware?

A. Mmm -- do I, as I sit here today, remember any -- I believe I may have looked at it.

Q. And what did you look at?

A. I looked at the price.

Q. In The Wall Street Journal or The New York Times, or something of that nature?

A. No, on my computer.

Q. Did you look at any other financial information regarding Intraware?

A. I may have looked at some articles.

MR. OSTRAGER: I instruct the witness to answer as to your personal knowledge or recollection, and let's not speculate.

Q. Do you think you may have looked at some articles?

A. That were listed at that time under the stock.

Q. But you didn't retain those

TSG Reporting - Worldwide   212-702-9580

---

Page 89

Segen

articles.

A. No.

Q. Because it wasn't a very big purchase; right?

A. I wouldn't have retained it, anyway.

Q. Since the purchase of this Intraware stock, on July 5th, 2002, you have not purchased nor sold any Intraware stock; is that correct?

A. Correct.

Q. You have just had the ten shares become one share by the reverse split.

A. Yes.

Q. Did you pay for these shares with your own funds?

A. Yes.

Q. How did you pay for them?

A. I have money in my account.

Q. So, it would be documented in your Schwab account.

A. I guess so.

Q. No one else gave you money to make this purchase; did they?

TSG Reporting - Worldwide   212-702-9580

Page 90

Segen

1
2   A.  Definitely not.
3   Q.  And no one else reimbursed you
4  for this; did they?
5   A.  No.
6   Q.  Did anyone ever promise to
7  reimburse you?
8   A.  No.
9   Q.  Do you understand that if you
10  prevail in this lawsuit that you
11  personally won't receive the -- I'm sorry,
12  strike that.
13       In a 16(b) derivative action, if
14  the Plaintiff prevails, where does the
15  money go, do you know?
16   A.  It goes to the class and to the
17  corporation.
18   Q.  "To the class" -- who is the
19  class?
20   A.  The class of the defrauded
21  stockholders, but that it goes primarily
22  back to the corporation, because it's a
23  fraud on the corporation.
24   Q.  So it doesn't go to the
25  individual shareholders.

TSG Reporting - Worldwide   212-702-9580

Page 91

Segen

1
2   A.  I am not sure.  I think it does.
3   Q.  So you think some portion goes
4  to the corporation and some portion goes
5  to the individual shareholders in their
6  own individual pockets.
7   A.  I believe so.
8   Q.  And what's the basis for that
9  belief?
10   A.  I have no basis.
11   Q.  Isn't it true that it goes back
12  to the -- quote, I am using your term --
13  "defrauded stockholders" -- I don't buy
14  into that, but I am using your term -- by
15  virtue of going back to the corporation
16  and then increasing the value of their
17  stock?
18   A.  I don't know.
19   Q.  You don't know?  You don't know
20  how it works?
21   A.  I don't.
22   Q.  Did anyone promise to you any
23  money or other benefit besides the possible
24  increased value of your stock to be a
25  Plaintiff in this action?

TSG Reporting - Worldwide   212-702-9580

Page 92

Segen

1
2   A.  No.  No one made me any promise
3  about any increase of the value of my
4  stock, either.
5   Q.  Did you ever -- have you ever
6  run a calculation to see how much your one
7  share would increase in value if, in fact,
8  you were successful in this lawsuit?
9   A.  No, it was never on my mind.
10   Q.  How about in the Covansys case?
11  Were you ever promised any benefit to be a
12  Plaintiff in that case?
13   A.  No.
14   Q.  Did you pay for the purchase of
15  the stock in Covansys?
16   A.  Yes.
17   Q.  Do you remember how soon before
18  the demand letter on Covansys that you
19  purchased that stock?
20   A.  I have no recollection.
21   Q.  Would you be surprised if it was
22  the same day that you have sent the demand
23  letter, just like in this case?
24   A.  Would I be surprised?
25   Q.  Mm-hmm.

TSG Reporting - Worldwide   212-702-9580

Page 93

Segen

1
2   A.  Uh -- I don't know how to answer
3  that.  I don't know.
4   Q.  But would your testimony under
5  oath, with regards to the Covansys, be the
6  same as this case, that there was absolutely
7  no connection between your demand for
8  disgorgement of short-swing profits and
9  your investment decision?
10       MR. OSTRAGER: I would object
11  insofar as -- I would object to the
12  characterization of the witness's
13  answer.
14       MR. DOKSON:  Objection is noted.
15   A.  It's too speculative, but I will
16  answer it anyway.
17   Q.  Okay.
18   A.  And --
19       THE WITNESS:  Can you read back
20  the question, please?
21       (The record was read.)
22   A.  Correct.
23   Q.  In both cases, your decision to
24  purchase was just purely as an investor
25  and not as a private attorney general, so

TSG Reporting - Worldwide   212-702-9580

**Segen**

1  **Segen**
2  to speak?
3      A.  It was more as a trader.
4      Q.  **It was more as a trader.**
5      A.  Yeah.
6      Q.  **Would you describe for me the**
7  **financial arrangement you have with**
8  **counsel -- and, by "counsel", I mean both**
9  **Mr. Ostrager and Mr. Wexler's firm -- to**
10 **represent you in this case.**
11     A.  I have no financial arrangement
12 with them.
13     Q.  **You are not paying them**
14 **anything.**
15     A.  No.
16     Q.  **So you certainly are not, then,**
17 **paying them anything on an hourly basis.**
18     A.  Correct.
19     Q.  **You understand hourly rates and**
20 **contingency rates and things of that**
21 **nature?**
22     A.  Mm-hmm.
23     Q.  **And, of course, they are not**
24 **doing it for free; are they?**
25     A.  I think they are doing it as

1      **Segen**
2  private attorney generals.
3      Q.  **Looking for legal fees out of**
4  **any recovery; is that a fair statement?**
5      A.  I am not sure how 16(b) works,
6  but I would -- you know, I would assume
7  so.
8      Q.  **How about any responsibility for**
9  **incurred expenses?  This litigation is not**
10 **going to be cheap.  Setting aside the**
11 **legal time, just expenses, who is**
12 **responsible for the payment of incurred**
13 **expenses in this case?**
14     A.  I am not sure.
15     Q.  **Have you ever had -- have you**
16 **ever been billed for any expenses?**
17     A.  I don't recall.
18     Q.  **Now, Mr. Ostrager had to travel**
19 **a few weeks ago to Wilmington.  Were you**
20 **billed for those expenses?**
21     A.  Not as of this date.
22     Q.  **Do you have any understanding**
23 **between you and either counsel's firm as**
24 **to the responsibility for expenses?**
25     A.  I believe that, ultimately, you

1      Segen
2  know, I am responsible for expenses.
3      Q.  **You know that as a litigator**
4  **basically --**
5      A.  No, it's just my -- you know,
6  it's my understanding.
7      Q.  **Who paid the filing fee in this**
8  **case?**
9      A.  I haven't paid it yet.
10     Q.  **You didn't file a poverty**
11 **affidavit; did you?**
12     A.  No.
13     Q.  **So you would -- would it be fair**
14 **to assume that your lawyers paid it -- or**
15 **advanced it?**
16     A.  I don't know how it was paid.
17     Q.  **But you know that you haven't**
18 **been billed for it yet.**
19     A.  I don't remember being billed
20 for it.
21     Q.  **In fact, you don't remember**
22 **being billed for any expenses.**
23     A.  Correct, I don't remember being
24 billed.
25     Q.  **And you don't have any written**

1      **Segen**
2  understanding with either law firm that
3  you will be ultimately responsible for the
4  expenses?
5      A.  Nothing in writing, correct.
6      Q.  **And the same thing would be true**
7  **in the Covansys case.**
8      A.  Correct.
9      Q.  **Do you have any oral — express**
10 **oral understanding with either law firm**
11 **that you will be responsible for expenses?**
12     A.  You know, I really don't recall
13 the conversation.  And I think it's
14 privileged, in any case.
15     Q.  **Well, that's — I am not sure I**
16 **agree with you, but the question is just**
17 **do you recall having an express oral**
18 **agreement.**
19     A.  What do you mean by "an express
20 oral agreement"?
21     Q.  **That you were told not in**
22 **writing but orally that you would be**
23 **ultimately — you testified earlier that**
24 **you believe you were ultimately — I'm**
25 **sorry.  Strike it, I'll ask a different**

Page 98

```
1              Segen
2    question.
3         You testified earlier that you
4    believe you were ultimately responsible
5    for the expenses that were incurred; is
6    that correct?
7         A.  Correct.
8         Q.  Tell me the basis of that belief
9    on your part.
10        A.  You know, I had conversations
11   with counsel, and it's my understanding,
12   as an attorney, as well, that if the action
13   doesn't cover their expenses that I am on
14   the hook.
15        Q.  Have you ever litigated a case
16   in any United States District Court that
17   resulted in a judgment either for your
18   client or against your client?
19        A.  Yes.
20        Q.  Okay, so you are familiar with
21   the provisions of the bill of costs in
22   actions in the United States District
23   Court.
24        A.  I am not sure what you are
25   referring to, no.
```
TSG Reporting - Worldwide    212-702-9580

Page 99

```
1              Segen
2         Q.  Are you familiar with the
3    provisions of 28 U.S.C. Section 1920?
4         A.  Not by heart, no.
5         Q.  Are you aware that a losing
6    party in a district court action can be
7    liable for expenses such as court —
8    filing fees, the fees for service, court
9    reporter fees, fees for printing and
10   copying fees, for witness's fees, for
11   exemplification, and matters such as that?
12        A.  Yeah, I realize it's very
13   theoretical.
14        Q.  Are you aware that those
15   expenses can run into the thousands of
16   dollars?
17        A.  I realize that it's very
18   theoretical.
19        MR. OSTRAGER:  I object.  I
20   think the witness can answer your
21   question "Yes" or "No".
22        MR. DOKSON:  Objection is noted.
23        MR. OSTRAGER:  And the
24   provisions of the code, you know,
25   speak for themselves.
```
TSG Reporting - Worldwide    212-702-9580

Page 100

```
1              Segen
2         MR. DOKSON:  He's a lawyer.
3         MR. OSTRAGER:  He's answered the
4    question already.
5         A.  I have had cases where there
6    were -- where there was, by agreement,
7    attorney fees had to be paid and they
8    weren't paid.
9         Q.  I am not talking about attorney
10   fees, I am talking about costs under 28
11   U.S.C. Section 1920.
12        A.  I do realize that some of those
13   fees may have to be paid.
14        Q.  And it's your understanding,
15   based on what you testified before, that
16   if costs are taxed against the Plaintiff
17   that those would be an obligation for you
18   and not for your lawyers.
19        A.  Correct.
20        Q.  Did anyone -- in the event that
21   such costs are taxed against you, has
22   anyone ever promised to you that they
23   would pay them for you?
24        A.  No.
25        Q.  Or that they would forgive them?
```
TSG Reporting - Worldwide    212-702-9580

Page 101

```
1              Segen
2         A.  No.
3         Q.  Have you ever heard the name
4    Deborah Donoghue?
5         A.  No, not that I can recall.
6         Q.  Are you aware that, before you
7    filed this lawsuit against the Defendants
8    in this case, that there was a prior case
9    that was filed by another Intraware
10   shareholder attacking exactly the same
11   transactions?
12        MR. OSTRAGER:  I would object to
13   your characterization of the record.
14        MR. DOKSON:  Objection is noted.
15        Q.  Are you aware of that?
16        A.  I think I heard something about
17   that.
18        Q.  And, if you can answer without
19   violating a privilege, can you tell me how
20   you heard that?
21        A.  I don't remember.
22        Q.  Did you ever see any documents
23   about that?
24        A.  I don't believe so.
25        Q.  Do you know what happened to that
```
TSG Reporting - Worldwide    212-702-9580

99

**Page 102**

Segen

1   lawsuit?
2   A. No.
3   Q. Do you remember who told you
4   anything about that?
5   A. Uh --
6   MR. OSTRAGER: I instruct the
7   witness not to disclose any
8   communications with counsel that are
9   privileged.
10   A. I don't remember.
11   Q. You don't remember who told you
12   or you can't answer without violating your
13   counsel's instructions?
14   A. Both.
15   Q. Those seem inconsistent. Either
16   you don't remember who told you or you
17   can't answer because it would implicate
18   privilege.
19   A. Well, it could be both situations.
20   I could have been told by more than one
21   source.
22   Q. Okay. Other than counsel, who
23   might have -- you say could have been told
24   by someone other than counsel, other than
25   

TSG Reporting - Worldwide    212-702-9580

**Page 103**

Segen

1   counsel, by whom could you have been told
2   this?
3   A. I might have read it somewhere.
4   Q. Do you remember where you might
5   have read it?
6   A. I might have read it in one of
7   the reports --
8   MR. OSTRAGER: I would ask the
9   witness not to speculate and just
10   testify as to your personal
11   recollection.
12   A. I have no recollection.
13   Q. And, so, you don't know what
14   happened to the Deborah Donoghue?
15   A. No.
16   Q. Do you know what a "dismissal
17   with prejudice" means?
18   A. Yes.
19   Q. Tell me what you think it means.
20   A. It means that the case can't be
21   brought again.
22   MR. DOKSON: Let's go off the
23   record for a second.
24   (Discussion off the record.)
25   

TSG Reporting - Worldwide    212-702-9580

**Page 104**

Segen

1   MR. DOKSON: Let's mark this as
2   Priddy 3.
3   (Deposition Defendants' Exhibit
4   P.R. 3, Plaintiff's Objections and
5   Responses to Defendants' Robert
6   Priddy and RMC Capital LLC's Requests
7   For Admissions, marked for
8   identification, as of this date.)
9   Q. Mr. Segen, I am showing you a
10   document that's marked as Priddy Exhibit
11   Number 3, Plaintiff's Objections and
12   Responses to Defendants' Robert Priddy and
13   RMC Capital LLC's Requests For Admissions.
14   Have you ever seen this document before?
15   A. I don't recall seeing it.
16   Q. I am not sure I -- does that
17   mean you haven't seen it?
18   A. No, it just means that I don't
19   recall.
20   Q. You don't recall. Well, if you
21   look at the date of service, it was served
22   less than a month ago. If you had seen
23   it, would you have -- I'm sorry, strike
24   that. That's okay.
25   

TSG Reporting - Worldwide    212-702-9580

**Page 105**

Segen

1   You are just not sure whether
2   you have seen it, then, or not.
3   A. I am not sure.
4   Q. Look at Priddy Number 2, which
5   is the request to which this is an answer.
6   Do you remember seeing those
7   before?
8   A. Don't recall.
9   Q. Do you know what a "request to
10   admit" is?
11   A. Yes, I do.
12   Q. I take it, as a litigator, you
13   have probably served some and had to
14   respond to a bunch; is that correct?
15   A. Correct.
16   Q. And you are aware, are you not,
17   as an attorney, that a denial to a request
18   to admit under Rule 36 of the Federal
19   Rules of Civil Procedure: "shall fairly
20   meet the substance of the requested
21   admission and with good faith requires the
22   party qualify an answer or deny only a
23   part of the matter on which an omission is
24   requested, the parties shall specify so
25   

TSG Reporting - Worldwide    212-702-9580

Page 106

Segen

1
2  much of it as is true and qualify or deny
3  the remainder", you are aware of that as a
4  litigator?
5      A.  I am aware of the section that
6  you are reading from, yes.
7      Q.  And you are aware, also, that,
8  in that same section, it provides that:
9  "An answering party may not give lack of
10  information or knowledge as a reason for
11  failure to admit or deny unless the party
12  states that the party has made reasonable
13  inquiry and that the information known or
14  readily obtainable by the party is
15  insufficient to enable the party to admit
16  or deny", you are aware of that?
17      A.  I know that that's -- I know
18  something to that effect.
19      Q.  So you understand that when a
20  party gets a request to admit that the
21  party has an obligation to respond in good
22  faith, and if it doesn't know the answer
23  to make inquiry to see if it can find the
24  information; is that correct?
25      A.  Correct.

TSG Reporting - Worldwide    212-702-9580

Page 107

Segen

1
2      Q.  And if you were not a lawyer, I
3  wouldn't be asking you these questions,
4  but as a lawyer you know that.
5      A.  I know that that's the way it's
6  supposed to be done, but of course what
7  constitutes "reasonable inquiry" is the
8  issue.
9      MR. OSTRAGER:  (Gesturing.)
10      Q.  Let's look, if we could, please,
11  sir, at Request Number 17.  If you would
12  read that to yourself, please, sir.
13      A.  (Pause.)
14      Q.  Now, you have denied that
15  allegation --
16      MR. OSTRAGER:  Is that a
17  question?
18      MR. DOKSON:  No, that is a
19  preface to a question.
20      MR. OSTRAGER:  Okay, let's hear
21  the question.
22      MR. DOKSON:  Okay.
23      Q.  What is factually incorrect in
24  Interrogatory -- in Request to Admit
25  Number 17?

TSG Reporting - Worldwide    212-702-9580

Page 108

Segen

1
2      MR. OSTRAGER:  I would object
3  insofar as you are asking the witness
4  to comment upon the legal doctrine
5  and law that applies to this case.
6  If you have a question that you would
7  like to direct to the witness
8  concerning a factual matter, you can
9  do that --
10      MR. DOKSON:  The question --
11      MR. OSTRAGER:  -- or if you want
12  to ask the witness his understanding
13  of the law, you can ask him that, as
14  well.
15      MR. DOKSON:  Well, he has
16  already testified his understanding.
17      Q.  The question was, what is
18  factually incorrect in Request Number 17.
19      A.  I don't understand your question
20  at all.
21      MR. OSTRAGER:  This admission
22  calls for legal conclusions and, so,
23  insofar as you are asking the witness
24  to comment upon legal conclusions, we
25  object.  If you want to ask him about

TSG Reporting - Worldwide    212-702-9580

Page 109

Segen

1
2  his knowledge, his personal
3  knowledge, about anything that's set
4  forth in that request to admit, you
5  can do that.
6      Q.  My question is --
7      MR. DOKSON:  When you take your
8  depositions, you can frame the
9  questions the way you want.  I will
10  frame my questions the way I want.
11      MR. OSTRAGER:  I will lodge my
12  objections, and you can read from the
13  federal rules as you please.
14      MR. DOKSON:  Your objection is
15  noted.
16      Q.  My question to you is, what is
17  factually incorrect in Request to Admit
18  Number 17.
19      A.  Are you asking me, you know, why
20  it was denied?
21      Q.  Yes.
22      A.  That's --
23      Q.  You got it, you asked the
24  question better, why was it denied?
25      A.  I guess --

TSG Reporting - Worldwide    212-702-9580

07

**Page 110**

Segen

MR. OSTRAGER: We haven't
established the witness knows it was
admitted or denied; have we.

THE WITNESS: I can read, it
says "denied".

A.  I guess the reason it was
denied --

MR. OSTRAGER: I instruct the
witness not to speculate.  If you
have personal knowledge why it was
denied, you can testify to that.

MR. DOKSON: The witness was
answering the question.

Q.  Go ahead, sir.

A.  I guess it was denied because
the information that you indicated that
Plaintiff or his counsel had actual notice
of -- uh -- on or before July 5th, 2002,
they didn't -- well, they didn't have.

Q.  Well, let's look back at, if you
would, please, sir, Exhibit Priddy Number
5, which is the demand letter.

A.  Yeah.

Q.  Okay.  I think you have already

TSG Reporting - Worldwide    212-702-9580

**Page 111**

Segen

testified that, in this demand letter,
that, as of July 5th, 2002, when the
letter was written --

A.  No, I didn't testify to that.

Q.  -- that the Plaintiff had -- or
his counsel, had information regarding the
alleged insiders' names, ComVest and
Priddy.

Do you see that?

A.  That's not what I testified to.

Q.  What did you testify --

MR. OSTRAGER: You can read back
whatever he testified to on the
record.

Q.  What do you recall --

MR. OSTRAGER: Do you have a
question --

A.  I didn't testify to that.  I
can't testify to, you know, what somebody
else knew.  I can tell you only that I
didn't know it.

Q.  You didn't know as of July 5th,
2002 that the alleged insiders' names were
ComVest and Priddy.

TSG Reporting - Worldwide    212-702-9580

**Page 112**

Segen

A.  Not to my recollection.

Q.  But you did have discussions
about the letter, Priddy 5, before it was
sent.

A.  Yes, I believe I did.

Q.  So, in those discussions, were
there any discussions about the names of
the insiders?

A.  I don't believe so.

Q.  Okay.  So, while you may not
have had knowledge about the information
in Number 17, you think your counsel may
have?

A.  I can't answer that.

Q.  Well, tell me how you think
that -- I'm sorry, strike that.

Do you know who wrote Priddy
Exhibit 5?

A.  Uh -- no.

Q.  Okay, under whose signature it
went?

A.  It appears to be Mr. Ostrager's
signature.

Q.  It would also appear, then, that

TSG Reporting - Worldwide    212-702-9580

**Page 113**

Segen

Mr. Ostrager had to have knowledge of what
was contained in the letter before he sent
it; didn't he?  Wouldn't you agree with
me?

A.  I don't know if the date is
correct.

Q.  Sir, I understand that.  What do
you mean -- do you think it was sent after
July 5th?

A.  I don't know.

MR. OSTRAGER: I instruct the
witness to answer as to his personal
knowledge concerning the letter and
the answers, if any.

Q.  Look at Request Number 18,
please, sir, in Priddy number 3.

A.  (Pause.)

Q.  You have denied that.  Can you
tell me what's factually incorrect in that
Request To Admit Number 18?

A.  All I can tell you is that I
don't know anything that pertains to
Request to Admit Number 18.

Q.  Did you participate in any way

TSG Reporting - Worldwide    212-702-9580

Page 114

```
1            Segen
2  in the draft of Priddy Number 3?  That is,
3  the responses.
4      A.  I am really not sure, but I
5  might have been asked some questions by my
6  counsel --
7      Q.  But you don't --
8      A.  -- regarding it.
9      Q.  You might have been asked?
10     A.  Yeah, because, you know, I have
11 been asked questions by counsel.  I didn't
12 necessarily know that it was regarding a
13 request to admit.
14     Q.  I take it it's fair to say,
15 then, from that testimony, that you didn't
16 review this response before it was sent.
17     A.  I don't recall reviewing it.
18     Q.  If you had reviewed it, is that
19 something you would have recalled?
20     A.  Perhaps.
21     Q.  It's not very long ago.
22     A.  (Pause.)
23         October 3rd, apparently.
24     Q.  Of this year.
25     A.  Yeah.
       TSG Reporting - Worldwide   212-702-9580
```

Page 115

```
1            Segen
2      Q.  So, even though you are getting
3  up there, you are not as old as I am, you
4  are getting up there, you would recall if
5  you had reviewed this within the last
6  month or so; wouldn't you?
7      A.  Whether I would -- the exact
8  document -- I recall being asked questions
9  that relate to these requests.
10     Q.  I appreciate that, but -- I just
11 want to get it clear -- but you don't
12 recall seeing either this (indicating)
13 response in writing or something similar.
14     A.  I --
15         MR. OSTRAGER:  I would object,
16     asked and answered.
17         MR. DOKSON:  Your objection is
18     noted.
19     A.  I don't recall seeing it in
20 writing.
21     Q.  And, because we are not talking
22 about years ago, we are talking about a
23 month or so ago, you would recall if you
24 saw it in writing; wouldn't you?
25     A.  Perhaps.  You know, quite
       TSG Reporting - Worldwide   212-702-9580
```

Page 116

```
1            Segen
2  frankly, even if this was sent to me I
3  wouldn't have reviewed it.
4      Q.  Why is that?
5      A.  Because --
6         MR. OSTRAGER:  (Gesturing.)
7      Q.  Why would you not have reviewed
8  it if it was sent to you?
9      A.  It goes beyond my understanding
10 of the information.  I don't -- you know,
11 I don't have that kind of specific
12 information.  I just bought the stock.
13     Q.  Do you believe, as the named
14 Plaintiff in this lawsuit, that you have
15 any obligation to make sure that things
16 are factually correct that are submitted
17 to the court, based on what you
18 understand?
19     A.  If I had information that could
20 possibly be applicable, yes.  But the only
21 information I have is that I purchased the
22 stock.
23     Q.  Look at Request Number 19,
24 please, sir.
25     A.  (Pause.)
       TSG Reporting - Worldwide   212-702-9580
```

Page 117

```
1            Segen
2      Q.  What's factually incorrect
3  there?
4      A.  I have no knowledge about
5  anything regarding Number 19.
6      Q.  Do you know --
7      A.  I can only tell you about my
8  knowledge.
9      Q.  Do you know what a "warrant" is?
10     A.  Not in regard to this action,
11 no.
12     Q.  Do you know what a "derivative
13 security" is?
14     A.  I have some very amorphous
15 knowledge of it, nothing very specific.
16     Q.  Me, too.  But you don't get to
17 ask the questions, I get to ask the
18 questions, so tell me what you understand
19 a "derivative security" to be.
20     A.  A "derivative security"?
21     Q.  Yes, sir.
22     A.  I don't know.
23     Q.  I thought you just told me you
24 have some amorphous knowledge.
25     A.  I thought you were talking about
       TSG Reporting - Worldwide   212-702-9580
```

15

**Page 118**

Segen

1
2  a "derivative action".
3      **Q. What do you know about a**
4  **"derivative action"?**
5      A. What I know about a "derivative
6  action" is that there are certain examples
7  of it, like a "class action". It's where
8  A represents B, C, D, E, F, and G.
9      **Q. Look at Request Number 20.**
10      A. (Pause.)
11      **Q. What is factually incorrect**
12  **there?**
13      A. Again, I can only tell you about
14  my own knowledge, and I have no knowledge
15  regarding what's called for in Number 20.
16  I think the same is true about every
17  single one of these, I have no knowledge
18  regarding any of these.
19          I want to point out something
20  that I might have knowledge about --
21          MR. OSTRAGER: I instruct the
22      witness just to answer the question.
23          THE WITNESS: Stop him, not me.
24      **Q. So what is factually incorrect**
25  **with respect to Number 21?**

TSG Reporting - Worldwide    212-702-9580

**Page 119**

Segen

1
2      A. First of all, I don't even
3  really understand the question, "factually
4  incorrect". I am not sure that that's,
5  you know, the proper terminology for this.
6  But, in any case, I don't have any
7  information personally regarding Number
8  21.
9      **Q. Same thing for Number 22; right?**
10      A. (Pause.)
11          Correct.
12      **Q. Okay. Now, we can go off a**
13  **little differently. Let's look at Number**
14  **23. Number 23, the answer was: "We**
15  **"neither admit nor deny and refer**
16  **Defendants to the public stock records."**
17  **My question to you, sir, is what**
18  **reasonable inquiry you made in answering**
19  **Request to Admit Number 23.**
20      A. I stand by the answer.
21      **Q. That wasn't the question. The**
22  **question was what reasonable inquiry you**
23  **made. You are the Plaintiff.**
24      A. Mm-hmm.
25      **Q. Did you make any inquiry in**

TSG Reporting - Worldwide    212-702-9580

**Page 120**

Segen

1
2  response to Request Number 23.
3      A. Not that I remember.
4      **Q. Okay. You are aware that Rule**
5  **36 says that: "An answering party may not**
6  **give lack of information or knowledge**
7  **unless the party states that the party has**
8  **made reasonable inquiry" --**
9      **(Discussion off the record.)**
10      MR. OSTRAGER: Why don't you
11      give her the rule.
12      **Q. You are aware that Rule 36**
13  **provides that: "An answering party may**
14  **not give lack of information or knowledge**
15  **as a reason for failure to admit or deny**
16  **unless the party states that the party has**
17  **made reasonable inquiry and that the**
18  **information known or readably obtainable**
19  **by the party is insufficient to enable the**
20  **party to admit or deny". You are aware of**
21  **that provision in Rule 36?**
22      A. Mm-hmm.
23      **Q. You are aware, are you not, that**
24  **you are the answering party because you**
25  **are the named Plaintiff.**

TSG Reporting - Worldwide    212-702-9580

**Page 121**

Segen

1
2      A. It's not under my -- it's not my
3  name.
4      **Q. It's not your name?**
5      A. I didn't sign it.
6      **Q. Who was the Plaintiff in this**
7  **action?**
8      A. No, I mean I didn't sign this,
9  the request to admit.
10      **Q. I didn't ask you that, sir.**
11  **You are the Plaintiff; right?**
12      A. Yes.
13      **Q. Okay. Mr. Ostrager is not the**
14  **Plaintiff, (indicating Mr. Ostrager); is**
15  **he?**
16      A. Yes -- no, he is not.
17      **Q. He is not. He has got a**
18  **financial stake in this lawsuit, but he's**
19  **not the Plaintiff; is he?**
20      A. I don't know that he has a
21  financial stake, but he's not the
22  Plaintiff.
23      **Q. Mr. Wexler is not the Plaintiff;**
24  **is he?**
25      A. No.

TSG Reporting - Worldwide    212-702-9580

Page 122

Segen

2     Q. Is there any party who is the
3 Plaintiff other than you?
4     A. What's your question?
5     Q. My question is, what reasonable
6 inquiry did you make in response -- to
7 enable you to attempt to answer Request
8 Number 23.
9     A. I agree that the proper answer
10 is that that's a matter of public record
11 and that no reasonable person would be
12 asked to try to find out whether on August
13 31st, 2001 it was publicly available. The
14 reasonable answer is the one that was
15 given.
16     Q. I'm sorry, I object to the
17 answer as non-responsive.
18       Did you make any inquiry in
19 response to Request to Admit Number 23?
20     MR. OSTRAGER: You can answer
21 "Yes" or "No".
22     A. I don't remember making any
23 inquiry.
24     Q. Let's go on to 24.
25     A. (Pause.)

TSG Reporting - Worldwide    212-702-9580

Page 123

Segen

2     Q. Did you make any inquiry in
3 response to Request to Admit Number 24?
4     A. I don't remember making any
5 inquiry.
6     Q. Look at Request Number 25.
7     A. (Pause.)
8     Q. What is factually incorrect in
9 Request Number 25?
10     A. Once again, I have no information
11 regarding Number 25.
12     Q. So --
13     A. Couldn't tell you.
14     Q. So, if you have no information,
15 how can you deny it?
16     A. My attorneys might have
17 information.
18     Q. You don't know that, you are
19 speculating to that?
20     A. Hmm?
21     Q. You are speculating.
22     A. As I sit here, I don't remember
23 what information they have that's relevant
24 to this specific request to admit.
25     Q. Did you make any reasonable

TSG Reporting - Worldwide    212-702-9580

Page 124

Segen

2 inquiry before you denied Request Number
3 25?
4     A. I don't remember what, if any,
5 inquiry I made.
6     Q. In fact, you know that you
7 didn't make any inquiry; isn't that
8 correct?
9     A. I don't -- the way this is
10 drafted, I don't believe that I would be
11 required to make any kind of inquiry.
12 It's way beyond my basis of knowledge.
13     Q. I appreciate that, but that
14 wasn't my question. My question was, in
15 fact, you did not make any inquiry; did
16 you?
17     MR. OSTRAGER: You can answer
18 the question "Yes" or "No".
19     A. Not -- no.
20     Q. Look at Request to Admit Number
21 26.
22     A. (Pause.)
23     I have no basis of knowledge
24 regarding 26.
25     Q. So, you have no basis -- you

TSG Reporting - Worldwide    212-702-9580

Page 125

Segen

2 have no factual basis on which you have
3 denied 26; is that correct?
4     A. I don't have any knowledge
5 regarding Priddy and his investments.
6     Q. Did you make any inquiry before
7 denying Request Number 26?
8     A. I may have discussed it with my
9 attorney.
10     Q. Other than discussions with your
11 attorney, did you make any inquiry, or any
12 reasonable inquiry, before denying Request
13 Number 26?
14     A. No.
15     Q. The same thing would be true for
16 27; wouldn't it?
17     A. Yes, I would stand by my answer
18 to 26.
19     Q. So you have no factual basis for
20 the denial and you made no inquiry?
21     A. I stand by my entire answer to
22 26.
23     MR. OSTRAGER: I object to your
24 characterization of the witness's
25 answer.

TSG Reporting - Worldwide    212-702-9580

23

**Page 126**

Segen

1
2  MR. DOKSON:  Okay, then I will
3  ask it differently.
4  **Q.  Are you aware of any facts that**
5  **would support your denial of Request to**
6  **Admit Number 27?**
7  MR. OSTRAGER:  It's asked and
8  answered -- I object, it's asked and
9  answered.
10  MR. DOKSON:  Objection is noted.
11  **Q.  Are you aware of any factual**
12  **basis for the denial of Request to Admit**
13  **Number 27?**
14  A.  Only conversations that I may
15  have had with my attorney.
16  **Q.  And did you make any reasonable**
17  **inquiry before you denied Request Number**
18  **27?**
19  MR. OSTRAGER:  Object to your
20  question as characterizing as
21  "reasonable" or "unreasonable". You
22  can ask the witness whether he
23  personally did something or whether
24  he relied upon counsel.
25  MR. DOKSON:  Well, I am using

TSG Reporting - Worldwide    212-702-9580

**Page 127**

Segen

1
2  the term as set forth in Rule 36,
3  which he has testified he is familiar
4  with.
5  MR. OSTRAGER:  Well, what's the
6  question that is pending, sir?
7  MR. DOKSON:  (Indicating to the
8  court reporter.)
9  (The record was read.)
10  A.  I believe I did make reasonable
11  inquiry by speaking to counsel.
12  **Q.  Any reasonable inquiry other**
13  **than your discussions with counsel?**
14  A.  I don't know what you mean by
15  "reasonable inquiry" other than that.
16  **Q.  When I use the term "reasonable**
17  **inquiry", I am using the term as it's used**
18  **in Rule 36, which you testified you are**
19  **familiar with.**
20  A.  I said I am familiar with the
21  rule. I am not necessarily in a position
22  to opine what constitutes "reasonable". I
23  think that's for a judge to do.
24  **Q.  Look at Number 28.**
25  A.  (Pause.)

TSG Reporting - Worldwide    212-702-9580

**Page 128**

Segen

1
2  **Q.  What's the factual basis for**
3  **that denial?**
4  A.  I have no information regarding
5  the substance of Request to Admit Number
6  28.
7  **Q.  Did you make any reasonable**
8  **inquiry with regards to -- I'm sorry,**
9  **strike that.**
10  **Did you make any reasonable**
11  **inquiry with respect to Request to Admit**
12  **Number 28 before denying it?**
13  A.  Conversations with counsel.
14  **Q.  Anything else?**
15  A.  Any other inquiry?
16  **Q.  Yes.**
17  A.  Not that I can recall.
18  **Q.  This is a pretty important one,**
19  **because this one you have named -- I'm**
20  **sorry. Are you aware of the identity of**
21  **all the Defendants that you have named in**
22  **this lawsuit?**
23  A.  Am I aware of what?
24  **Q.  The identity of all the**
25  **Defendants that you have named in this**

TSG Reporting - Worldwide    212-702-9580

**Page 129**

Segen

1
2  lawsuit.
3  A.  I am not -- their identity? No,
4  I am not aware of their identity.
5  **Q.  You are aware that there are**
6  **Defendants that are named other than**
7  **Robert Priddy and ComVest Venture**
8  **Partners, LP; is that correct?**
9  A.  Yes.
10  **Q.  You are also aware, because we**
11  **looked at both the demand letter and the**
12  **complaint, that the only people or**
13  **entities as to whom transactions were**
14  **alleged were Mr. Priddy and ComVest. And,**
15  **so, my question to you is --**
16  MR. OSTRAGER:  And I would
17  object to your characterization of
18  the witness's knowledge. I would
19  object to your characterization as to
20  what --
21  MR. DOKSON:  You didn't let me
22  finish the question.
23  MR. OSTRAGER:  Let me finish the
24  objection.
25  I would object to your

TSG Reporting - Worldwide    212-702-9580

Page 130

Segen

1
2    characterization of what transactions
3    are at issue in this lawsuit. I
4    object to your parsing through the
5    complaint and isolating specific
6    allegations and characterizing them
7    as a summary of all allegations and
8    all trades at issue in the case. If
9    you have a question, you can ask the
10   witness.
11        MR. DOKSON:  Objection is noted.
12   Thank you for the speaking objection,
13   which we know was not appropriate.
14       Q.   Other than the allegations --
15   other than the trades identified in
16   paragraph 31 of the complaint, are you
17   aware of any other transactions that are
18   at issue in this 16(b) action which you
19   have brought as the Plaintiff?
20       A.   I really wouldn't know.
21       Q.   So you are not aware of any, the
22   answer is:  No, I am not aware of any.
23       A.   I don't recall.
24       Q.   If you don't recall as you sit
25   here today, you are not aware of any; is
TSG Reporting - Worldwide   212-702-9580

Page 131

Segen

1
2    that correct?
3        A.   At this moment, I am not -- I
4    can't recall, so I am not aware.
5        Q.   Okay.  But you are aware that
6    there are allegations made as to
7    transactions that were entered by
8    Mr. Priddy because that's set forth in
9    paragraph 31 of the complaint; right?
10       A.   You have refreshed my memory on
11   that.
12       Q.   So now, as you sit here today,
13   you are aware.
14       A.   I am aware that's what it says
15   in the complaint.
16       Q.   And you are aware of allegations
17   of one transaction with respect to ComVest;
18   is that correct?
19       A.   As a result of having my memory
20   refreshed with the complaint.
21       Q.   Now, my question to you is, are
22   there any other transactions that have
23   been entered into or engaged by any
24   Defendant other than Mr. Priddy and
25   ComVest that would be a disgorgeable
TSG Reporting - Worldwide   212-702-9580

Page 132

Segen

1
2    matching transaction?
3        A.   I wouldn't know, that's for my
4    attorneys.
5        Q.   So you don't have any basis for
6    the denial of Request to Admit Number 28?
7        MR. OSTRAGER:  I object to your
8    characterizing the witness's
9    testimony.
10       A.   Yes, I do.
11        As far as I know, it should be
12   denied, but that doesn't -- but I don't
13   know what my attorneys know.
14       Q.   Well, why should it be denied?
15       A.   Because I don't have any
16   information regarding that request to
17   admit, so the only possible answer would
18   be to deny it, based on my knowledge.
19       Q.   Based on a lack of knowledge.
20       A.   Based on my knowledge, yeah.
21       Q.   Or a lack of knowledge on your
22   part.
23       A.   Based on my knowledge or lack
24   thereof.
25       Q.   Okay.  And what reasonable
TSG Reporting - Worldwide   212-702-9580

Page 133

Segen

1
2    inquiry did you make with respect to
3    Request to Admit Number 28 since you did
4    not have knowledge by which to admit or
5    deny it?
6        A.   Conversations with counsel.
7        Q.   And nothing else?
8        A.   Not that I can recall.
9        Q.   Look at Request to Admit Number
10   29.
11       A.   (Pause.)
12        Same response as for Number 28.
13       Q.   You have no facts to support the
14   denial; is that correct?
15       A.   No.  I have no information that
16   would suggest to me that any answer but to
17   deny would be correct unless counsel has
18   additional information.
19       Q.   Do I understand what you are
20   saying here, Mr. Segen -- and I ask you
21   this both as a Plaintiff, as an attorney --
22   that if you don't have any information
23   that enables you to admit or deny a
24   request to admit you should go ahead and
25   deny it?
TSG Reporting - Worldwide   212-702-9580

Page 134

Segen

1  
2    A.  If my answer is, as far as I
3  know -- and I am just one of the entities
4  that's supposed to be responding to this --
5  as far as I know, Defendant RMC Capital
6  did not own any stock, then, you know, if
7  I was the only person whose knowledge was
8  involved, I would say yes, it would -- you
9  know, it would either be a denial or have
10  no basis for admitting or denying.  My
11  counsel has additional information, I
12  assume.
13        Actually, I think I misunderstood
14  Request to Admit Number 29.
15    Q.  Let's go back.
16        Go ahead and clarify your
17  answer, please.
18    A.  I have no information, but
19  counsel has additional information that
20  results in the answer of denial.
21    Q.  You know that counsel has
22  information.
23    A.  I believe he does.
24    Q.  But you believe that based on
25  conversations you have had with counsel.

TSG Reporting - Worldwide    212-702-9580

Page 135

Segen

1  
2    A.  General impression.
3    Q.  And what is that information?
4    A.  That's attorney/client.
5        MR. OSTRAGER:  I instruct the
6  witness not to answer insofar as it
7  requires him to divulge communications
8  with counsel.
9    Q.  Okay, do you need to clarify
10  that answer any further?
11    A.  No, I think I said that it's
12  attorney/client.
13    Q.  Tell me in your own words,
14  Mr. Segen, all facts of which you are
15  aware for the allegations in this case
16  that the Defendants are members of and
17  liable as a group, what I will call "the
18  group allegations", just tell me what you
19  know.
20    A.  Personally or based on
21  conversations I had with counsel?
22    Q.  As you sit here today, tell me
23  what you know.
24        MR. OSTRAGER:  I instruct the
25  witness not to answer the question

TSG Reporting - Worldwide    212-702-9580

Page 136

Segen

1  
2  insofar as it requires him to divulge
3  attorney/client communications.
4        MR. DOKSON:  I haven't asked
5  anything about communications.
6    Q.  I just want to know what you
7  know.
8    A.  Personally, and without the
9  benefit of conversations with counsel, all
10  that I know is that I went and bought the
11  Intraware stock for trading purposes.
12  That's all that I know.
13    Q.  And you went and bought that
14  based on your own decision as an investor
15  and in no way related to the provisions of
16  the federal securities laws; is that
17  correct?
18        MR. OSTRAGER:  I would object
19  insofar as you are characterizing the
20  witness's motive, which is not
21  relevant, but the witness said that
22  he made an investment and he also
23  testified that he spoke with counsel.
24        MR. DOKSON:  Objection is noted.
25        THE WITNESS:  It's been asked

TSG Reporting - Worldwide    212-702-9580

Page 137

Segen

1  
2  and answered.
3        MR. DOKSON:  The objection is
4  noted.
5    Q.  Would you answer the question,
6  please, sir?
7        MR. OSTRAGER:  What's the
8  question?
9        MR. DOKSON:  Read back the
10  question.
11        (The record was read.)
12    A.  Well, I believe that I have
13  stated that it wasn't necessarily my very
14  own decision as an investor but that there
15  may have been input from others regarding
16  the advisability of the trade, but no, it
17  had nothing to do with the securities law.
18    Q.  And those others were people at
19  Schwab?
20    A.  Or elsewhere.
21    Q.  Were any of those others
22  Mr. Ostrager or anybody in his firm?
23    A.  No.
24    Q.  Were any of those others
25  Mr. Wexler or anybody in his firm?

TSG Reporting - Worldwide    212-702-9580

Page 138

Segen

1           **Segen**
2   A. No.
3   Q. Okay. Now, to short-circuit
4 things, if I started going through the
5 complaint, which is filed in your name,
6 and asked you the basis for any number of
7 factual allegations in the 15-page 38-
8 paragraph complaint, is it a fair
9 conclusion that you are going to say "I
10 don't know anything about this except I
11 bought the stock"?
12   A. It would be a fair conclusion to
13 say that I can't recall anything other
14 than what I derived from conversations
15 with my counsel.
16   Q. Okay. So, other than the fact
17 that you bought the stock, any information
18 in the complaint, if you have it, that
19 information came from conversations with
20 counsel.
21   A. Correct.
22   Q. So I would be wasting my time
23 and yours if I went through paragraph by
24 paragraph; right?
25   A. I believe so, but there might be

TSG Reporting - Worldwide    212-702-9580

Page 139

1           Segen
2 something, for all I know.
3   Q. So, for example, paragraph 22,
4 where you say "the group members acted in
5 concert", you don't have any factual basis
6 for that allegation.
7   A. Nothing that I didn't get
8 from --
9   Q. From counsel?
10   A. From counsel.
11   Q. And if I asked you, in paragraph
12 25, about: "The pattern of group activity
13 is evidenced by similar group investments
14 in other companies", your testimony --
15   A. Same answer.
16   Q. -- would be the same thing.
17 Okay.
18     Tell me every fact that you are
19 aware, as the named Plaintiff, that upon
20 which you contend that the Plaintiff is
21 entitled to a claim of equitable tolling
22 in this case.
23   A. "Equitable tolling"?
24   Q. Yes, sir.
25   A. I don't even know what

TSG Reporting - Worldwide    212-702-9580

Page 140

1           Segen
2 "equitable tolling" is.
3   Q. You don't remember that in law
4 school?
5   A. No.
6     MR. DOKSON: Let's take a little
7 break.
8     (Recess taken: 1:21 p.m. -
9 1:38 p.m.)
10   Q. I asked you before about other
11 16(b) claims that you might have made and,
12 remember, we were talking about claim A
13 and claim B?
14   A. Yes.
15   Q. And you said you didn't really
16 remember. Do you know the name KFX?
17   A. I remember that name, yes.
18   Q. Tell me what you remember about
19 KFX.
20   A. That I bought the stock, and
21 that I think some -- an action may have
22 been filed.
23   Q. A complaint may have been filed?
24   A. May have been.
25   Q. You just don't know?

TSG Reporting - Worldwide    212-702-9580

Page 141

1           Segen
2   A. I can't recall.
3   Q. In fact, isn't it true that not
4 only was a complaint filed but, in fact,
5 judgment was entered against you?
6   A. I don't remember that.
7   Q. The style of the case is Segen
8 versus Westcliff Capital Management,
9 Westcliff Public Ventures dash KFX, and
10 others, Number 03 Civ. dash 1551, in the
11 Southern District.
12   A. That doesn't help me recall.
13   Q. That doesn't help you at all.
14   A. No.
15   Q. So you don't know whether or not
16 you lost that case.
17   A. I don't recall.
18   Q. You just don't recall.
19   A. Correct.
20   Q. Does that mean you never knew
21 or, as you sit here today, you can't
22 remember?
23   A. As I sit here today, I can't
24 remember.
25   Q. Okay. If, in fact, you had --

TSG Reporting - Worldwide    212-702-9580

## Page 142

Segen

1  strike that.
2  
3  Can you recall whether you
4  authorized filing a notice of appeal to
5  the Second Circuit?
6  A. I don't recall.
7  Q. You just don't recall whether
8  you did or not?
9  A. I don't recall that.
10  Q. Do you think that your counsel
11  would have filed a notice of appeal
12  without your authorization?
13  A. No.
14  Q. So if a notice of appeal was
15  filed, then you think that you would have
16  had to authorize that.
17  A. I believe so, yeah.
18  Q. Do you think that the case would
19  have been settled without your
20  authorization?
21  A. No.
22  Q. So, if the case were settled,
23  you would have had to authorize that.
24  A. I believe so, yes.
25  Q. Do you know if the case was

TSG Reporting - Worldwide    212-702-9580

## Page 143

Segen

1  settled?
2  
3  A. As I sit here today, I don't
4  recall.
5  Q. What would help you recall that?
6  A. Well, perhaps if you had the
7  settlement decree, or told me something
8  more about the settlement terms, that
9  might jog my memory.
10  Q. Do you have a file on the KFX
11  matter?
12  A. No.
13  Q. Neither a computer file nor
14  a hard --
15  A. Right.
16  Q. Let me finish, please, sir.
17  Neither a computer file nor a
18  hard copy.
19  A. Correct.
20  Q. Do you think that -- I'm sorry,
21  strike that.
22  Who was your counsel in that
23  case?
24  A. I don't recall. I believe it
25  was -- I believe it may have been Wexler.

TSG Reporting - Worldwide    212-702-9580

## Page 144

Segen

1  
2  Q. How about Mr. Ostrager?
3  A. If they did the case together --
4  I don't recall the specifics of the case,
5  but, you know, perhaps.
6  Q. Have you ever been involved in
7  any securities cases, whether you filed a
8  complaint or made a demand, that you had
9  counsel other than either Mr. Ostrager or
10  Mr. Wexler or both?
11  A. You know, I have discussed
12  matters with other attorneys, but I don't
13  believe that it's gone beyond that on any
14  case.
15  Q. So, if I understand what you
16  have just said, Mr. Segen, if any attorney
17  has taken any action on your behalf with
18  regards to a securities case, whether
19  making a demand on a company or filing a
20  complaint in a court of competent
21  jurisdiction, the only such attorneys
22  would have been either Mr. Wexler or his
23  firm or Mr. Ostrager or his firm or both?
24  A. I believe that's accurate.
25  Q. And, based on what you told me

TSG Reporting - Worldwide    212-702-9580

## Page 145

Segen

1  
2  earlier, even though you may not have a
3  file, you believe that, most likely, your
4  attorneys would have a file on litigation
5  that was filed; is that correct?
6  A. I would assume so.
7  MR. DOKSON: Excuse me just a
8  second. (Answering cellphone.)
9  (Pause.)
10  Q. And you just don't have any
11  independent recollection of the settlement
12  in the KFX case.
13  A. I think -- I may have had
14  conversations with counsel regarding it,
15  but --
16  Q. I don't want to know about
17  conversations -- or the contents of
18  conversations with counsel, but I do want
19  to know about your knowledge of the
20  settlement.
21  Do you have any knowledge of
22  the --
23  A. Not as I sit here today, I don't
24  recall the terms.
25  Q. Do you know that it was settled?

TSG Reporting - Worldwide    212-702-9580

Page 146

```
          Segen
 1
 2       A.  I believe it was.
 3       Q.  And what's the basis of that
 4    belief?
 5          If you can answer that without
 6    telling me the conversations with counsel.
 7       A.  If I am remembering correctly,
 8    it would have been from conversations with
 9    counsel (indicating Mr. Ostrager).
10       Q.  Did you ever review a settlement
11    document?
12       A.  I don't remember doing that.
13       Q.  Does that mean you may have but
14    you don't remember or --
15       A.  No.
16       Q.  -- or that there was no --
17       A.  The former.
18       Q.  Okay.  Do you even know if there
19    was a settlement document?
20          MR. OSTRAGER:  Object, asked and
21    answered.
22          MR. DOKSON:  Objection is noted.
23       A.  I don't recall.
24       Q.  Did you ever read Judge Pauley's
25    decision in the KFX case?
```
TSG Reporting - Worldwide    212-702-9580

Page 147

```
          Segen
 1
 2       A.  I don't recall if I did, I don't
 3    recall at this time.
 4       Q.  Do you know if a demand letter
 5    was made on KFX on your behalf prior to
 6    filing that lawsuit similar to the demand
 7    letter that was made on Intraware in this
 8    case?
 9       A.  I don't know about similarity,
10    but I believe it was.
11       Q.  Do you recall that you owned
12    stock in KFX at the time the demand letter
13    was --
14       A.  Yes, I do recall that I had
15    stock, but just when I bought it I don't
16    recall.
17       Q.  You are anticipating my
18    questions.
19       A.  I assume it was before.
20       Q.  Do you recall if you bought that
21    KFX stock in your Schwab account?
22       A.  Yeah.
23       Q.  "Yes", you do recall?
24       A.  Yes.
25       Q.  And, so, the answer is "yes",
```
TSG Reporting - Worldwide    212-702-9580

Page 148

```
          Segen
 1
 2    you do recall, and "yes", you did buy it
 3    in the Schwab account.
 4       A.  Yes.
 5       Q.  Do you still own the KFX stock?
 6       A.  I am not sure.
 7       Q.  Do you recall how much KFX stock
 8    you bought?
 9       A.  No.
10       Q.  Do you have a copy of the demand
11    letter?
12       A.  In the KFX case?
13       Q.  Yes, sir.
14       A.  Certainly not that I retained.
15       Q.  And you don't know if your
16    counsel does or not.
17       A.  I don't know.
18       Q.  And KFX might, you don't know.
19       A.  No.
20       Q.  And was your motive in
21    purchasing the KFX stock, whenever you
22    bought it, in any way related to possible
23    violations of the federal securities laws
24    or was it totally as an investment
25    decision on your part?
```
TSG Reporting - Worldwide    212-702-9580

Page 149

```
          Segen
 1
 2       A.  Well, it was, you know, the
 3    same -- basically, the same situation, I
 4    believe as (indicating) here, to the best
 5    I can recall.  Essentially, I made the
 6    decision as an investor/trader, but that I
 7    might have had conversations with counsel
 8    about KLX.
 9       Q.  KFX.
10       A.  You know, regarding trading,
11    improper trading, before I purchased it.
12       Q.  But before you purchased it.
13       A.  Yeah, perhaps, I might have,
14    just like I did here.
15       Q.  Wait, I'm sorry, I
16    misunderstood.
17          Are you testifying -- because I
18    think this is different than what I
19    understood -- are you testifying that, in
20    this case, that is, in the Intraware case,
21    that you had or may have had conversations
22    with counsel about improper trading prior
23    to the time you purchased the stock?
24       A.  Since I don't recall the dates
25    of either the -- of that entire period,
```
TSG Reporting - Worldwide    212-702-9580

147

Page 150

Segen

1
2  yes, I might have had conversations, you
3  know, with counsel regarding some trading
4  patterns.
5      MR. OSTRAGER: I instruct the
6  witness not to answer about any
7  attorney/client communications.
8      Q. Now, I think you testified, with
9  respect to the Intraware matter, that you
10 may have had advice from others who were
11 not counsel who may have assisted you in
12 your investment decision; is that correct?
13     A. Could have been the case, yes.
14     Q. It could have been people at
15 Schwab.
16     A. Could have been.
17     Q. In the KFX situation, was the
18 investment decision made on your own or
19 could it also have been based on the
20 conversations you may have had with
21 investment advisors?
22     A. Well, I don't recall, but it
23 could have been.
24     Q. Same as in this case?
25     A. Yeah.

TSG Reporting - Worldwide    212-702-9580

Page 151

Segen

1
2      Q. But, in both cases, you didn't
3  get any advice to purchase either the
4  Intraware stock in this case or the KFX
5  stock from counsel; is that your
6  testimony?
7      A. Not advice to purchase, no.
8      MR. OSTRAGER: I instruct the
9  witness not to answer --
10     THE WITNESS: Right.
11     MR. OSTRAGER: -- questions
12 regarding communications with
13 counsel.
14     MR. DOKSON: Well, in fact, he
15 was -- counsel was serving as an
16 investment advisor, I don't think
17 that's covered by the privilege.
18     MR. OSTRAGER: Why don't you ask
19 him if counsel served as an
20 investment advisor. Lay a
21 foundation.
22     Q. Did counsel ever serve as an
23 investment advisor for you?
24     A. No way.
25     Q. Did counsel in either the KFX

TSG Reporting - Worldwide    212-702-9580

9

Page 152

Segen

1
2  case or Intraware case ever suggest to you
3  to purchase any stock?
4      A. No.
5      Q. And you just have no
6  recollection, as you sit here, as to the
7  outcome of the KFX case.
8      A. Certainly no recollection of the
9  specifics, and just a very vague
10 recollection -- I really don't have -- no,
11 I don't have a recollection.
12     Q. Tell me what your vague
13 recollection is.
14     A. It's just too vague.
15     I had some kind -- I just
16 remember having some conversations with
17 counsel regarding the out-- you know,
18 regarding both the ongoing nature of the
19 case and, also, the outcome, as I had --
20 you know, as I always have.
21     Q. Well, let me just go through
22 that.
23     You know a complaint was filed;
24 right?
25     A. I believe so. I don't recall

TSG Reporting - Worldwide    212-702-9580

Page 153

Segen

1
2  the specifics. I really don't recall --
3      Q. You don't even know if a
4  complaint was filed?
5      A. I believe it was, but, you know,
6  I don't have, as I sit here today, an
7  empirical recollection of it.
8      Q. You don't know whether or not
9  that case is still pending; do you?
10     A. I don't believe it is.
11     Q. Well, if you don't --
12     A. Based on conversations.
13     Q. Well, if you don't believe it's
14 now pending, what do you think happened to
15 it?
16     A. I believe that there was a
17 resolution of the matter.
18     Q. Do you know if that resolution
19 was by judgment or if that resolution was
20 by settlement or is there some other
21 possibilities between -- other than
22 judgment or settlement?
23     A. You know, I don't have any
24 specific recall, but I don't believe it
25 was by judgment.

TSG Reporting - Worldwide    212-702-9580

Page 154

```
1              Segen
2     Q.  You don't think any judgment was
3  entered in that case?
4     A.  Yeah, I believe that judgment --
5  a judgment may have been entered, but that
6  the ultimate resolution of it was
7  otherwise.
8     Q.  After judgment.
9     A.  Yeah, but -- that there was a
10  settlement of some sort, but I don't
11  remember the specifics of it.
12     Q.  So, as you sit here today --
13     A.  But it's all based on
14  conversations with counsel.
15     Q.  I don't want to know about
16  conversations with counsel, I just want to
17  know about your knowledge as you sit here
18  today.
19     A.  I have no independent knowledge.
20     Q.  As you sit here today, you think
21  there was a complaint filed, a ruling by
22  the court, and a subsequent settlement
23  thereafter; is that correct?
24     A.  Uh -- I believe so.
25     Q.  Okay, you are not sure, but you
```

Page 155

```
1              Segen
2  think that's right.
3     A.  Yeah.
4     Q.  Is that a fair characterization?
5     A.  Correct.
6     Q.  And, assuming that is correct,
7  you don't have any independent recollection
8  of the contents or the substance of the
9  settlement.
10     A.  Correct.
11     Q.  But you -- and you know you
12  don't have any documentation that would
13  help you refresh your recollection as to
14  that.
15     A.  I certainly didn't retain any,
16  if I ever had any.
17     Q.  And, as you sit here today, you
18  can't remember what the content was.
19     A.  Correct.
20     Q.  So if anybody has that
21  information, you think it may be your
22  counsel.
23     A.  I believe counsel might have
24  it --
25     Q.  Okay.
```

Page 156

```
1              Segen
2     A.  -- but I don't know.
3     MR. DOKSON:  I don't have
4  anything further.
5     Your witness.
6     MR. OSTRAGER:  I have no
7  questions.
8     (Time noted:  1:53 p.m.)
9
10
11  _____
12          LEON SEGEN
13
14  Subscribed and sworn to
15  before me this _____ day
16  of _____, 2005.
17
18  _____
18  Notary Public
19
20
21
22
23
24
25
```

Page 157

```
1
2        C E R T I F I C A T E
3  STATE OF NEW YORK   )
                       : ss.
4  COUNTY OF NEW YORK  )
5
        I, WENDY D. BOSKIND, an RPR
6  and Notary Public within and for
   the State of New York, do hereby
7  certify:
        That LEON SEGEN, the witness
8  whose deposition is hereinbefore
9  set forth, was duly sworn by me,
   and that such deposition is a true
10 and accurate record of the testimony
11 given by the witness.
12     I further certify that I am not
13 related to any of the parties to this
14 action by blood or marriage, and that
   I am in no way interested in the
15 outcome of this matter.
16     IN WITNESS WHEREOF, I have
17 hereunto set my hand this 11th day
18 of November, 2005.
19
20
21  _____
22      WENDY D. BOSKIND, RPR
23
24
25
```

e 155

Page 158

```
1
2   November 1, 2005
3        I N D E X
4   WITNESS                    PAGE
5   Leon Segen
6
7   EXAMINATION BY
8   MR. DOKSON..........................5:14
9
10  --------------EXHIBITS--------------
11  Defendants' Exhibit P.R. 4, Defendant
12  Robert Priddy and RMC's First Request for
13  Production of Documents to Plaintiff.....
14  ................................. 11:9
15  Defendants' Exhibit P.R. 2, Defendants
16  Robert Priddy's and RMC Capital, LLC's
17  First Request For Admissions To Plaintiff
18  Leon Segen........................ 12:21
19  Defendants' Exhibit P.R. 1, Complaint....
20  ................................. 45:15
21  Defendants' Exhibit P.R. 5, letter,
22  dated July 5, 2002, to Board of
23  Directors, Intraware, Inc, from Glenn E.
24  Ostrager........................... 65:21
25
```

TSG Reporting - Worldwide   212-702-9580

Page 159

```
1
2   Defendants' Exhibit P.R. 3, Plaintiff's
3   Objections and Responses to Defendants'
4   Robert Priddy and RMC Capital LLC's
5   Requests For Admissions............ 104:4
6
7   (REQUEST.)........................ 19:17
8
9   (DIRECTION NOT TO ANSWER.)......... 59:9
10  (DIRECTION NOT TO ANSWER.)........ 65:14
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

TSG Reporting - Worldwide   212-702-9580

7

Page 160

```
1
2   ERRATA SHEET
3
4   STATE OF NEW YORK  )   Pg__ of __Pgs
5             ss:
6   COUNTY OF NEW YORK)
7
8       I wish to make the following changes,
9   for the following reasons:
10  PAGE LINE
11  ____ ____ CHANGE: _____
12        REASON: _____
13  ____ ____ CHANGE: _____
14        REASON: _____
15  ____ ____ CHANGE: _____
16        REASON: _____
17  ____ ____ CHANGE: _____
18        REASON: _____
19  ____ ____ CHANGE: _____
20        REASON: _____
21  ____ ____ CHANGE: _____
22        REASON: _____
23
24
25          LEON SEGEN
```

TSG Reporting - Worldwide   212-702-9580

**A**

abide (1)
59:12
ability (5)
6:19 10:23 11:4 31:18
51:3
able (3)
28:5 77:11 80:8
absolutely (2)
82:25 93:6
acceptable (2)
35:18,19
access (2)
67:10,14
account (9)
86:23 87:8,10,14,16
89:20,22 147:21
148:3
accurate (4)
30:6 60:17 144:24
157:13
Acquisition (2)
36:5,24
Act (1)
61:23
acted (1)
139:4
acting (1)
22:6
action (18)
1:5 21:12 43:7,10
90:13 91:25 98:12
99:6 117:10 118:2,4
118:6,7 121:7
130:18 140:21
144:17 157:17
actions (2)
51:19 98:22
activity (1)
139:12
actual (2)
68:25 110:18
additional (3)
133:18 134:11,19
address (3)
4:3 7:25 49:15
addressed (1)
17:25
Adequate (1)
10:18
admission (2)
105:22 108:21
Admissions (6)
12:17,24 104:8,14
158:17 159:5
admit (32)
105:11,19 106:11,15
106:20 107:24

109:4,17 113:21,24
114:13 119:15,19
120:15,20 121:9
122:19 123:3,24
124:20 126:6,12
128:5,11 132:6,17
133:3,4,9,23,24
134:14
admitted (1)
110:4
admitting (1)
134:10
advanced (1)
96:15
advice (4)
22:6 150:10 151:3,7
advisability (1)
137:16
advise (1)
84:19
advisor (4)
86:6 151:16,20,23
advisors (3)
84:23,23 150:21
affect (2)
10:23 11:4
affidavit (1)
96:11
affiliated (1)
73:19
ago (8)
45:14 61:21 77:15
95:19 104:23
114:21 115:22,23
agree (11)
6:8 44:11 57:10 62:3
79:19 80:4,5,11
97:16 113:4 122:9
agreeable (6)
4:21,22 5:5,6 6:4 7:3
agreement (4)
71:16 97:18,20 100:6
ahead (4)
64:13 110:15 133:24
134:16
alcohol (1)
10:19
allegation (2)
107:15 139:6
allegations (11)
15:6 57:11 70:15
130:6,7,14 131:6,16
135:15,18 138:7
alleged (6)
42:5 56:5,7 111:8,24
129:14
alleges (1)
62:14

alphabetical (1)
48:7
amorphous (2)
117:14,24
amounts (1)
83:21
answer (81)
5:4 6:16,16,23,24
13:11,12 17:8 22:10
28:2,6 29:3 31:19
31:25 32:13,15,16
35:14 42:14 47:10
55:13 56:13,16 59:8
59:9,10 60:23 61:11
64:6,14 65:11,11,14
65:15 68:2 75:16
76:15 77:10,12
88:18 93:2,13,16
99:20 101:18
102:13,18 105:6,23
106:22 112:15
113:13 118:22
119:14,20 122:7,9
122:14,17,20
124:17 125:17,21
125:25 130:22
132:17 133:16
134:2,17,20 135:6
135:10,25 137:5
139:15 146:5
147:25 150:6 151:9
159:9,10
answered (8)
30:22 41:25 100:3
115:16 126:8,9
137:2 146:21
answering (7)
106:9 110:14 119:18
120:5,13,24 145:8
answers (1)
113:15
anticipated (1)
68:5
anticipating (1)
147:17
anybody (8)
41:20 51:11 67:10
84:12 85:16 137:22
137:25 155:20
anymore (1)
84:11
anyway (2)
89:7 93:16
apart (1)
78:11
apparently (5)
54:25 55:3 62:17 63:5
114:23
appeal (5)

29:12,16 142:4,11,14
appear (4)
70:21,22 71:3 112:25
appears (6)
62:7,11,23,25 63:16
112:23
applicable (1)
116:20
applies (1)
108:5
appreciate (3)
42:12 115:10 124:13
appropriate (6)
20:12,18,21 21:12
29:5 130:13
approval (2)
31:16 32:8
approved (1)
68:10
approximate (1)
78:21
approximately (1)
9:18
area (2)
22:13 60:6
aren't (1)
70:24
arrangement (2)
94:7,11
array (1)
85:11
arrived (1)
17:17
articles (3)
88:16,22 89:2
aside (1)
95:10
asked (20)
18:18 22:13 43:25
73:5,15 109:23
114:5,9,11 115:8,16
122:12 126:7,8
136:4,25 138:6
139:11 140:10
146:20
asking (10)
31:17 32:2 40:24
55:10 60:12 79:24
107:3 108:3,23
109:19
assert (1)
20:5
asserted (2)
40:16,20
assertion (1)
17:21
assistant (2)
48:17 49:17

assisted (1)
150:11
associate (1)
23:14
Associates (5)
1:7,8 36:7,25 37:2
assume (6)
69:8 95:6 96:14
134:12 145:6
147:19
assuming (1)
155:6
Atlanta (1)
3:18
attached (2)
12:14 16:14
attacking (3)
59:4,5 101:10
attempt (1)
122:7
attorney (16)
23:12 26:14 35:20
41:10 68:16 93:25
95:2 98:12 100:7,9
105:18 125:9,11
126:15 133:21
144:16
attorneys (9)
3:5,14 15:4 123:16
132:4,13 144:12,21
145:4
attorney's (3)
23:9,10 59:12
attorney/client (10)
15:21 65:12 73:18,22
74:15 76:2 135:4,12
136:3 150:7
August (2)
61:16 122:12
authorization (4)
33:7 71:23 142:12,20
authorize (9)
33:5,6 36:14 67:23
68:7 69:23 76:5
142:16,23
authorized (8)
27:19 36:17 68:8,10
68:20 69:12,16
142:4
authorizing (1)
37:20
available (1)
122:13
Avenue (2)
2:11 3:6
aware (48)
14:4,19 15:5 16:16
27:13 28:8 43:13
44:18,22,23,25 45:5

45:8,9 56:2,3 79:18
99:5,14 101:6,15
105:17 106:3,5,7,16
120:4,12,20,23
126:4,11 128:20,23
129:4,5,10 130:17
130:21,22,25 131:4
131:5,13,14,16
135:15 139:19
**a.m (3)**
2:5 35:23,24

**B**

**b (8)**
34:2,4 35:5 42:22
57:12 70:15 118:8
140:13
**back (17)**
22:12,17 29:25 30:24
35:25 59:18 64:3
73:9 74:10 90:22
91:11,15 93:19
110:21 111:13
134:15 137:9
**background (3)**
9:3 22:13,16
**Bar (1)**
83:10
**based (17)**
6:2 15:17,20 55:13
100:15 116:17
132:18,19,20,23
134:24 135:20
136:14 144:25
150:19 153:12
154:13
**basically (3)**
53:19 96:4 149:3
**basis (21)**
15:15 19:2,14 30:17
65:16 91:8,10 94:17
98:8 124:12,23,25
125:2,19 126:12
128:2 132:5 134:10
138:6 139:5 146:3
**beginning (1)**
75:6
**behalf (6)**
1:3 46:10 51:14 68:21
144:17 147:5
**belief (3)**
91:9 98:8 146:4
**believe (86)**
5:23 11:21 13:14
14:21,22 15:25
16:19 18:9 20:9,18
25:9,12,16 26:25
31:5 38:8,12 39:19
39:20 42:6,20 43:14

44:14 46:8,9 52:4,8
52:20 53:10 60:15
65:5 66:9,15,20
67:4 71:20 72:2,7
72:13,15,17,22
73:16 76:16 79:2
81:12 82:12 84:7,9
85:7,7 87:4 88:5
91:7 95:25 97:24
98:4 101:24 112:6
112:10 116:13
124:10 127:10
134:23,24 137:12
138:25 142:17,24
143:24,25 144:13
144:24 145:3 146:2
147:10 149:4
152:25 153:5,10,13
153:16,24 154:4,24
155:23
**believes (2)**
18:3,10
**bell (1)**
28:17
**benefit (3)**
91:23 92:11 136:9
**best (4)**
6:19 31:23 51:3 149:4
**better (1)**
109:24
**beyond (7)**
26:17 31:18 53:3
60:22 116:9 124:12
144:13
**big (1)**
89:4
**bill (1)**
98:21
**billed (6)**
95:16,20 96:18,19,22
96:24
**birthday (1)**
7:17
**bit (3)**
8:16 22:15 69:11
**blood (1)**
157:17
**Board (2)**
65:23 158:22
**borders (1)**
58:24
**Boskind (5)**
1:21 2:12 4:7 157:5
157:24
**bought (12)**
52:13 87:17 116:12
136:10,13 138:11
138:17 140:20
147:15,20 148:8,22

**break (4)**
9:9 35:22 56:20 140:7
**briefly (1)**
18:21
**briefs (1)**
44:6
**Broitman (2)**
2:10 3:4
**broker (3)**
35:17 39:14,15
**brokerage (1)**
21:20
**brokers (2)**
85:10,11
**Brook (2)**
22:24 74:10
**Brooklyn (1)**
23:8
**brought (5)**
17:18 25:25 29:23
103:22 130:19
**bunch (2)**
46:11 63:9 105:15
**business (2)**
4:3 7:24
**buy (7)**
42:8,17 49:18 84:8,11
91:13 148:2

**C**

**C (5)**
3:2 34:7 118:8 157:2
157:2
**cabinet (1)**
48:4
**calculation (1)**
92:6
**call (12)**
30:9 33:25 34:2,3,6
48:17 52:23 70:9
74:23 86:19,21
135:17
**called (3)**
13:18 18:17 118:15
**calls (3)**
77:18 85:6 108:22
**can't (31)**
28:6 38:9,19,23 39:8
46:22 50:10 56:23
60:6,9,23 65:16
66:16 69:7 78:2,15
78:19,20 80:9 84:17
102:13,18 103:21
111:20 112:15
131:4 138:13 141:2
141:21,23 155:18
**Capital (11)**
1:8 3:15 4:13 12:16

12:23 104:7,14
134:5 141:8 158:16
159:4
**car (1)**
9:24
**Cardozo (2)**
22:25 23:3
**careful (1)**
26:14
**case (90)**
4:14 5:24 9:21,23,25
10:6 24:6,12,16,19
25:8,14,18 27:14
28:8,10,11 29:9,12
29:16,19 34:3,4,6,6
34:8,10 35:5,9,13
36:4,10,14 37:8,10
37:12,15 40:19 43:7
44:6,12,18,19 46:10
51:12 69:9 83:4
92:10,12,23 93:6
94:10 95:13 96:8
97:7,14 98:15 101:8
101:8 103:21 108:5
119:6 130:8 135:15
139:22 141:7,16
142:18,22,25
143:23 144:3,4,14
144:18 145:12
146:25 147:8
148:12 149:20,20
150:13,24 151:4
152:2,2,7,19 153:9
154:3
**cases (21)**
9:10,11,16 23:18,20
25:5,9 26:2,15
29:22 30:4,9 33:13
33:16,19,22 42:22
93:23 100:5 144:7
151:2
**catch (1)**
7:24
**category (1)**
48:5
**CDR (5)**
36:4,7,23,25 37:2
**cellphone (1)**
145:8
**Centre (1)**
3:16
**certain (5)**
41:15 52:9,13 53:7
118:6
**certainly (7)**
6:14 7:18 15:22 94:16
148:14 152:8
155:15
**certify (2)**

157:8,15
**cetera (1)**
47:21
**chance (1)**
33:19
**CHANGE (6)**
160:11,13,15,17,19
160:21
**changes (1)**
160:8
**characterization (8)**
76:10 93:12 101:13
125:24 129:17,19
130:2 155:4
**characterize (2)**
18:12 21:22,24
**characterizing (4)**
126:20 130:6 132:8
136:19
**charged (1)**
10:13
**Charles (1)**
18:17
**cheap (1)**
95:10
**Chong (3)**
2:9 3:4 71:4
**Circuit (3)**
29:13,17 142:5
**City (2)**
8:3 22:21
**Civ (1)**
141:10
**Civil (5)**
1:5 4:17 43:6,10
105:20
**claim (14)**
19:2,14,22 40:15,20
42:5,8,16 52:3,7
54:7 139:21 140:12
140:13
**claimed (4)**
57:13,22,24 58:14
**claiming (1)**
60:3
**claims (1)**
140:11
**clarify (2)**
134:16 135:9
**class (7)**
58:21 74:8 90:16,18
90:19,20 118:7
**Clayton (2)**
36:5,24
**clear (5)**
6:7 33:18 42:3 58:4
115:11
**clearly-understood ...**

6:17
**client (2)**
98:18,18
**code (1)**
99:24
**College (1)**
22:21
**come (4)**
9:25 45:2 74:5,18
**comment (2)**
108:4,24
**commercial (1)**
8:16
**commission (2)**
81:22 82:5
**committed (1)**
52:15
**COMMONWEAL...**
1:7,8
**communications (9)**
65:13 75:18,22 102:9
135:7 136:3,5 150:7
151:12
**companies (2)**
33:16 139:14
**company (10)**
1:8 30:11 31:13 32:6
34:13,18 35:11,16
37:14 144:19
**Compare (1)**
70:14
**compel (2)**
21:7,8
**competent (1)**
144:20
**complaint (37)**
25:25 26:6 29:23 30:5
33:14,23 34:11
37:21 38:6 42:25
43:9,13 45:16 46:9
46:13 47:6 50:19,24
56:10,16 129:12
130:5,16 131:9,15
131:20 138:5,8,18
140:23 141:4 144:8
144:20 152:23
153:4 154:21
158:19
**complaint's (1)**
44:21
**complete (1)**
6:2
**complex (1)**
56:24
**computer (6)**
66:23 67:2,13 88:12
143:13,17
**ComVest (16)**
1:6,7 14:23 44:19

47:20 54:14 55:20
59:15,19,21 111:8
111:25 129:7,14
131:17,25
**conceptually (1)**
76:6
**concerned (2)**
5:10 33:10
**concerning (2)**
108:8 113:14
**concert (1)**
139:5
**conclude (1)**
40:12
**conclusion (5)**
60:5,13 69:8 138:9,12
**conclusions (2)**
108:22,24
**conduct (1)**
32:21
**conference (1)**
21:3
**confirmation (2)**
17:18 35:17
**connection (1)**
93:7
**consider (1)**
21:17
**constitutes (2)**
107:7 127:22
**contained (2)**
75:3 113:3
**contemporaneously...**
69:3
**contend (2)**
55:22 139:20
**contending (3)**
54:14,20,21
**content (2)**
41:16 155:18
**contents (4)**
41:13 68:18 145:17
155:8
**contingency (1)**
94:20
**conversation (4)**
69:13,17 76:18 97:13
**conversations (35)**
15:17,21,23 40:25
41:5,10,13,15,17,21
68:16,24 69:4 98:10
126:14 128:13
133:6 134:25
135:21 136:9
138:14,19 145:14
145:17,18 146:6,8
149:7,21 150:2,20
152:16 153:12

154:14,16
**convicted (1)**
10:13
**Cookie (2)**
36:4,23
**copies (1)**
47:4
**copy (10)**
12:14 18:18 28:22,25
45:19 66:3 67:15
69:2 143:18 148:10
**copying (1)**
99:10
**Corp (2)**
37:3 44:12
**corporation (5)**
90:17,22,23 91:4,15
**correct (67)**
6:18 11:6 30:7 40:11
42:9,18,25 43:2
46:15,16 50:4,9
51:2,7 54:17,24
55:24 57:14 64:20
68:22 69:18,20 71:6
74:24,25 76:7 78:18
78:22 81:6 82:18
83:5 87:20 89:11,12
93:22 94:18 96:23
97:5,8 98:6,7
100:19 105:15,16
106:24,25 113:7
116:16 119:11
124:8 125:3 129:8
131:2,18 133:14,17
136:17 138:21
141:19 143:19
145:5 150:12
154:23 155:5,6,10
155:19
**correctly (2)**
82:10 146:7
**costs (4)**
98:21 100:10,16,21
**couldn't (4)**
69:12,15 80:11
123:13
**counsel (72)**
14:9 15:18,24 18:10
18:21 19:5 25:23
30:18 41:2,14,18,22
57:8 71:6 72:9
75:18,20 79:4,11
94:8,8 98:11 102:9
102:23,25 103:2
110:18 111:7
112:13 114:6,11
126:24 127:11,13
128:13 133:6,17
134:11,19,21,25

135:8,21 136:9,23
138:15,20 139:9,10
142:10 143:22
144:9 145:14,18
146:6,9 148:16
149:7,22 150:3,11
151:5,13,15,19,22
151:25 152:17
154:14,16 155:22
155:23
**counsel's (3)**
16:25 95:23 102:14
**COUNTY (2)**
157:4 160:6
**couple (1)**
33:12
**course (4)**
51:13 61:19 94:23
107:6
**court (12)**
1:1 6:21 83:9 98:16
98:23 99:6,7,8
116:17 127:8
144:20 154:22
**courtesy (1)**
7:5
**Covansys (24)**
37:3,5,7,16,17,18,23
38:2,6,18 39:13,17
39:23 40:19 42:4
43:7 44:12 48:13
50:7 92:10,15,18
93:5 97:7
**cover (1)**
98:13
**covered (1)**
151:17
**credible (1)**
85:19
**criminal (1)**
10:13
**cross-examination (...**
4:18
**curious (2)**
44:5,8
**currently (1)**
7:20
**C-O-V-A-N-S-Y-S (...**
37:3

**D**

**D (7)**
1:21 2:12 4:6 118:8
157:5,24 158:3
**dash (2)**
141:9,10
**date (20)**
11:13 13:2 20:20
45:17 60:19 63:6

64:16 65:25 74:22
77:4,25 78:19,21
80:8 82:24 83:12
95:21 104:9,22
113:6
**dated (2)**
65:22 158:22
**dates (5)**
24:20 62:12 63:9
66:17 149:24
**day (5)**
77:15 78:3 92:22
156:15 157:21
**days (3)**
48:17 52:20 53:11
**deal (1)**
6:22
**dealt (3)**
86:7,8,13
**debate (2)**
16:8 17:9
**Deborah (2)**
101:4 103:15
**decision (10)**
84:15 93:9,23 136:14
137:14 146:25
148:25 149:6
150:12,18
**decisions (2)**
22:3,4
**decree (1)**
143:7
**deem (2)**
21:12 29:4
**defendant (10)**
9:6,16 11:10,16 23:20
23:23 59:19 131:24
134:5 158:11
**Defendants (32)**
1:11 3:14 4:12 11:9
12:15,21,22 14:23
24:9 28:13,14 36:23
44:20 45:15 46:12
65:21 101:7 104:4,6
104:13 119:16
128:21,25 129:6
135:16 158:11,15
158:15,19,21 159:2
159:3
**defined (1)**
59:21
**definitely (3)**
35:16 38:4 90:2
**defrauded (2)**
90:20 91:13
**degree (2)**
22:20,21
**DELAWARE (1)**
1:1