**CASES ATTACHED PURSUANT TO
LOCAL RULE 7.1.3 (a) (G)**

**(LEXIS CITATIONS ONLY)**

---

1.    <u>Applied Biosystems, Inc. v. Cruachem, Inc.</u>, 1990 U.S. Dist. LEXIS 21003
      (D. Del. 1990).

2.    <u>Cook, Inc. v. C.R. Bard, Inc.</u>, 2003 U.S. Dist. LEXIS 20779 (S.D. Ind. 2003).

3.    <u>Morales v. Executive Telecard, Ltd.</u>, 1998 U.S. Dist. LEXIS 8839
      (S.D. N.Y. 1998).

4.    <u>Rohm and Haas Co. v. Brotech Corp.</u>, 1990 U.S. Dist. LEXIS 20117
      (D. Del. 1990).

*1990 U.S. Dist. LEXIS 21003, **

APPLIED BIOSYSTEMS, INC., Plaintiff, v. CRUACHEM, INC., Defendant.

Civil Action No. 89-579-JRR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1990 U.S. Dist. LEXIS 21003

August 3, 1990, Decided

**DISPOSITION: [*1]** Defendant's motion to compel discovery granted. Plaintiff's motion to sever patent issues from antitrust issues at trial granted.

**CORE TERMS:** discovery, antitrust, patent, privileged, motion to sever, patent misuse, attorney-client, counterclaim, waived, sever, deadline, production of documents, conduct discovery, withheld, deposition, scheduling, Federal Rules of Civil Procedure, tried separately, patents-in-suit, infringement, unilateral, augment, deems, prevails

**COUNSEL:** Jeffrey M. Weiner, Esquire, Wilmington, Delaware.

Arthur M. Lieberman, Esquire, David A. Kalow, Esquire, Henry Pitman, Esquire, OF COUNSEL, Lieberman, Rudolph & Nowak, New York, New York.

Donald F. Parsons, Jr., Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware.

Robert J. Koch, Esquire, David M. Foster, Esquire, OF COUNSEL, Fulbright & Jawroski, Washington, D.C.

**JUDGES:** ROTH, District Judge.

**OPINIONBY:** ROTH

**OPINION: MEMORANDUM OPINION**

Wilmington, Delaware
August 3, 1990

**ROTH, District Judge**

Plaintiff Applied Biosystems ("ABIO") commenced this action for patent infringement on October 20, 1989, against defendant Cruachem, Inc. ("Cruachem"). ABIO alleges that Cruachem has infringed U.S. Patent Nos. 4,415,732 and 4,458,066, of which ABIO is the exclusive licensee. The patents-in-suit involve methods and chemistries for constructing DNA fragments in the field of biotechnology and genetic engineering. Cruachem denies infringement and asserts that the patents-in-suit are invalid. Cruachem also counterclaims under section 2 of the Sherman Act, 15 U.S.C. § 2, [*2] the Virginia Antitrust Act, Va. Code Ann. § 59.1-9.6, and asserts patent misuse by ABIO. ABIO has moved to sever the patent issues in this case from the antitrust issues and to stay discovery of the antitrust issues. ABIO's motion is presently before the Court.

Also before the Court is Cruachem's motion to compel discovery. Both parties filed motions to compel discovery in December, 1989. The Court denied these motions in open court on January 26, 1990, and strongly encouraged the parties to resolve their discovery disputes on their own. Later, on May 8, 1990, the Court entered a stipulated scheduling order which provided that production in response to first requests for documents be completed by May 17, 1990. Cruachem moved to compel when ABIO failed to comply with this order. We will deal with each motion in turn.

I. Cruachem's Motion to Compel

Discovery in this case is governed by the stipulated scheduling order of May 8, 1990. (D.I. 35) Paragraph 1(a) of that order provides:

> Production in response to first requests for documents under Fed. R. Civ. P. 34. This discovery, including identification of documents being withheld from production on grounds of attorney-client [*3] privilege or work-product immunity, shall be completed in accordance with the Federal Rules of Civil Procedure by May 17, 1990.

Despite this order, on May 17 ABIO withheld production of documents that it deems related to the antitrust claims, served no objections under Fed. R. Civ. P 34, submitted a "draft" list of privileged documents, and did not produce a "final" list of privileged documents until June 14. ABIO does not interpret the order to require it to conduct discovery on the antitrust issues in this case because of its pending motion to sever the antitrust issues from the patent issues. This amounts to a unilateral stay of discovery on antitrust issues by ABIO.

This Court dealt with a similar situation in Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc., 707 F. Supp. 1429 (D. Del. 1989). In that case the defendant moved for a separate trial on damages and to stay discovery on damages. The defendant then refused to respond to discovery on damages pending a hearing on its motion to sever. This Court ruled that "unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all." [*4] Willemijn, 707 F. Supp. at 1441.

So here, the fact that ABIO has pending a motion to sever antitrust issues from patent issues does not impact upon its duty under the Federal Rules of Civil Procedure and under the stipulated order to conduct discovery on all issues in this case. In fact, ABIO's motion to sever was not filed until the day after the May 17 discovery deadline. ABIO's motion has no effect on its duty to provide discovery, and, even if it did, the deadline had come and gone before it was filed. ABIO will be ordered to respond fully to Cruachem's first request for production of documents within two weeks of this memorandum opinion.

ABIO may assert the attorney-client privilege for those documents listed on ABIO's "draft" privileged document list on May 17. The attorney-client privilege is waived as to all documents not listed as of May 17. See, e.g., Krewson v. City of Quincy, 120 F.R.D. 6, 7 (D. Mass. 1988) (defendant waived objections to document request by failing to serve timely response); Perry v. Golub, 74 F.R.D. 360, 363 (N.D. Ala. 1976) (objection on the grounds of privilege waived by failure to file timely objection); [*5] United States v. 58.16 Acres of Land, 66 F.R.D. 570, 572 (E.D. Ill. 1975) ("an objection that the information sought is privileged, is waived by a failure to make it within the proper time limits"). ABIO, as the party asserting the attorney-client privilege, bears the burden of showing that it is entitled to the privilege. Willemijn, 707 F. Supp. at 1443; International Paper Co. v. Fiberboard Corp., 63 F.R.D. 88, 93 (D. Del. 1974). ABIO's service of a "final" list of privileged documents on June 14 does not cure its failure to comply with the May 17 deadline or its failure to assert privilege as to documents left off its "draft" list. ABIO may, however, augment its description of those documents listed as privileged as of May 17 if it deems added description to be necessary. We permit this unorthodox procedure only because ABIO apparently believed in good faith that it was not required to do more than list its privileged documents by the May 17 discovery deadline. We note, however, that the settled law in this District is to the contrary. See Willemijn, 707 F. Supp. at 1443 (denying party opportunity to augment its description [*6] of privileged documents in its brief). n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 We also deny ABIO's motion for leave to file a rebuttal to Cruachem's reply brief (D.I. 52), and ABIO's request for oral argument on the discovery issue. (D.I. 53)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

II. ABIO's Motion to Sever Trial and to Stay Antitrust Discovery

Turning to ABIO's motion to sever the antitrust issues from the patent issues, we note that Cruachem does not seriously oppose ABIO's request to sever these issues for trial. Separate trials in this case would be "in furtherance of convenience [and] conducive to expedition and economy." Fed. R. Civ. P. 42(b). Both the patent and antitrust aspects of this case will require extended trials involving complex issues. Accordingly we will sever this case for trial on the merits. See In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

For the following reasons, however, we will not stay antitrust discovery. It is within this Court's discretion to decide whether to limit discovery on issues that have been [*7] separated for trial. This is so even in patent cases where antitrust and patent issues are to be tried separately. Innotron, 800 F.2d at 1078; Alarm Device Mfg. Co. v. Alarm Prod. Int'l, Inc., 60 F.R.D. 199 (E.D.N.Y. 1973); Standard Pressed Steel Co. v. Astoria Plating Corp., 1969 U.S. Dist. LEXIS 10541, 162 U.S.P.Q. 441, 442 (N.D. Ohio 1969).

A stay of discovery at this stage of the proceedings is inappropriate in light of the extensive antitrust discovery that has already taken place. Cruachem has responded fully to ABIO's first set of interrogatories and first request for the production of documents (totalling nearly 50,000 pages of documents). This discovery included substantial material relevant to Cruachem's antitrust and patent misuse counterclaims. ABIO has yet to respond in kind to Cruachem's requests for antitrust discovery. Therefore there has been roughly nine months of unilateral discovery on antitrust issues by ABIO.

ABIO will not be burdened by going forward with antitrust discovery. It has stated that it is ready, willing and able to produce the antitrust documents it has thus far withheld. Moreover, much of the "antitrust" [*8] discovery objected to by ABIO is potentially relevant to patent issues. These include the issues of damages, and secondary indicia of nonobviousness, such as commercial success.

Severance of discovery at this stage of the proceedings would not necessarily save time or expense. It appears that Cruachem will seek trial on the merits of its antitrust counterclaims whether or not ABIO prevails on the merits of the infringement issues. Cruachem's counterclaim allegations include overbroad licensing practices by ABIO and tying the sale of patented products to the sale of unpatented products. Discovery and trial on these issues may have to proceed even if ABIO prevails on its patent claims.

Nor has ABIO shown that the number of depositions will be materially reduced by staying discovery related to the antitrust and patent misuse issues. The vast majority of deposition witnesses will give testimony relevant to both patent and antitrust issues. These witnesses include ABIO, University Patents, Inc., and University of Colorado personnel, as well as ABIO's customers. A stay of antitrust discovery may necessitate multiple depositions of these witnesses.

The Court also notes that discovery in [*9] this case has been characterized by the parties' mutual inability to agree on anything. If past experience is a harbinger of things to come, a stay of antitrust discovery will merely serve to multiply discovery disputes inordinately. For example, the parties already disagree over what is "antitrust-related" discovery. Such bickering will serve only to waste the Court's and the parties' time. This factor militates against a stay of antitrust discovery. Willemijn, 707 F. Supp. at 1435.

Finally, it was not made clear to the Court at the scheduling conference on May 8 that any of the discovery due on May 17 was in the antitrust category. It is unfair for ABIO to have stipulated to a discovery production date without making it perfectly clear that it intended to withhold discovery

Case 1:04-cv-00822-JJF    Document 70-6    Filed 03/20/2006    Page 5 of 25

on "antitrust" issues.

## CONCLUSION

Cruachem's motion to compel will be granted. ABIO's motion to sever will be granted as to trial. The patent issues in this case will be tried separately from the antitrust and patent misuse issues. Discovery of antitrust issues will not be stayed pending trial on the patent issues. An appropriate order will issue.

*2003 U.S. Dist. LEXIS 20779, **

COOK INCORPORATED, Plaintiff, vs. C.R. BARD, INC., et al., Defendants.

CAUSE NO. IP 00-1791-C (B/S)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

2003 U.S. Dist. LEXIS 20779

September 18, 2003, Decided

**DISPOSITION:** **[*1]** Plaintiff's objections to magistrate judge's denial of motion for protective order overruled.

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a civil suit, defendant noticed a deposition of plaintiff 's in-house counsel. Plaintiff moved for a protective order. A magistrate judge denied the motion. Pursuant to Fed. R. Civ. P. 72(a), plaintiff filed objections to the magistrate's decision.

**OVERVIEW:** Objecting, pursuant to Fed. R. Civ. P. 72(a), to the magistrate judge's decision, plaintiff argued that the ruling was clearly erroneous and contrary to law because the magistrate failed to follow Eighth Circuit precedent that required a party seeking to depose opposing counsel to demonstrate that (1) no other means than deposing opposing counsel existed to obtain the information; (2) the information sought was relevant and nonprivileged; and (3) the information was crucial to the preparation of the case. The magistrate properly rejected that standard. The sanction provisions available under the Federal Rules of Civil Procedure and 28 U.S.C.S. § 1927 generally were sufficient to prevent abuse of the opportunity to depose opposing counsel, and it was preferable to address concrete objections rather than resolve abstract privilege and relevancy arguments. The court subscribed to a procedure that rejected any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course.

**OUTCOME:** The court overruled plaintiff's objections to the magistrate judge's decision.

**CORE TERMS:** deposition, opposing counsel, deposing, depose, protective order, clearly erroneous, prior restraint, deponent, patent

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Magistrates > Pretrial Orders 🔢

*HN1* A district court's review of a discovery-related ruling by a magistrate judge is governed by
⬇ Fed. R. Civ. P. 72(a).  More Like This Headnote

Civil Procedure > Magistrates > Pretrial Orders 🔢

*HN2* See Fed. R. Civ. P. 72(a).
⬇

Civil Procedure > Magistrates > Pretrial Orders 🔢

*HN3* The clear error standard of Fed. R. Civ. P. 72(a) means that the district court can overturn
⬇ the magistrate judge's ruling only if the district court is left with the definite and firm

conviction that a mistake has been made. <u>More Like This Headnote</u>

Civil Procedure > <u>Discovery Methods</u> > <u>Oral Depositions</u> 

*HN4* The United States District Court for the Northern District of Illinois subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course. <u>More Like This Headnote</u> | *Shepardize: Restrict By Headnote*

**COUNSEL:** For COOK INCORPORATED, plaintiff: LAWRENCE A STEWARD, BRINKS HOFER GILSON & LIONE, INDIANAPOLIS, IN.

For COOK INCORPORATED, plaintiff: ROBERT UNIKEL, SCHIFF HARDIN & WAITE, CHICAGO, IL.

For C R BARD INC, ANGIOMED GMBH & CO, defendants: V SAMUEL LAURIN III, BOSE MCKINNEY & EVANS, INDIANAPOLIS, IN.

For C R BARD INC, ANGIOMED GMBH & CO, defendants: THOMAS B KENWORTHY, MORGAN LEWIS & BOCKIUS, PHILADELPHIA, PA.

**JUDGES:** Sarah Evans Barker, Judge, United States District Court, Southern District of Indiana.

**OPINIONBY:** Sarah Evans Barker

**OPINION: ENTRY ON OBJECTIONS TO MAGISTRATE JUDGE'S DENIAL OF MOTION FOR PROTECTIVE ORDER**

This cause is before the Court on plaintiff Cook Incorporated's ("Cook") Objections to Magistrate Judge's Denial of Motion for Protective Order which was filed pursuant to <u>Federal Rule of Civil Procedure 72(a)</u>. Cook's objection is fully briefed, and the Court, being duly advised, **OVERRULES** the **[*2]** objection for the following reasons.

At issue is the Magistrate Judge's ruling permitting defendant C.R. Bard, Inc. ("Bard") to take the deposition of Richard J. Godlewski, a patent attorney employed in-house by Cook. *HN1* Our review of a discovery-related ruling by the Magistrate Judge is governed by <u>Rule 72(a)</u>, *HN2* which provides: "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." <u>Fed.R.Civ. 72(a)</u>; see also <u>28 U.S.C. § 636(b)(1)</u>. *HN3* "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." <u>Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997)</u>.

Cook argues that the Magistrate Judge's ruling is clearly erroneous and contrary to law because the Magistrate Judge failed to follow the standard set forth in <u>Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986)</u> and its progeny, **[*3]** which imposes upon a party seeking to depose opposing counsel the burden of first demonstrating that "(1) no other means exist to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." <u>Id. at 1327</u>. Cook argues at length--correctly, in the Court's estimation--that Bard failed to satisfy the burden imposed upon would-be deponents by Shelton. However, Cook is incorrect that in denying its motion for protective order the Magistrate Judge "misapplied the Shelton test." Cook's Brief at 2. In fact, the Magistrate Judge did not apply the Shelton test at all, but rather implicitly rejected the holding of Shelton altogether. Therefore, the threshold issue before the Court is whether it was error for the Magistrate Judge to reject the <u>Shelton</u> standard. The Court finds that it was not.

The rule established in Shelton "was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation

strategy." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8th Cir. 2002). **[*4]** n1 The Eighth Circuit determined that "this abuse of the discovery process had become an ever increasing practice," and therefore "erected the Shelton test as a barrier to protect trial counsel from these depositions." Id. Unlike the Shelton court, this court has not found that deposing opposing counsel has become a common practice; there is certainly no indication that it has become enough of a problem in cases before this court that a special rule is necessary to deal with it. Rather, the Court believes that the sanctions provisions available under the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 generally are sufficient to prevent the type of discovery abuses with which the Shelton court was concerned. Given the availability of sanctions, the Court agrees with the Magistrate Judge that the desirability of placing concrete objections before the Court for resolution, rather than asking the Court to resolve abstract privilege and relevancy arguments, outweighs the need to protect attorneys from the risk of sitting through frivolous depositions. See Magistrate Judge's Entry at 1-2 ("The burden of convening a deposition, even if virtually **[*5]** every question is met with a privilege objection, is simply not so great as to justify a prior restraint on the deposition ....); accord Qad., Inc. v. ALN Associates, Inc., 132 F.R.D. 492 (N.D. Ill. 1990) *HN4*("This Court subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course."). Therefore, the Court finds that it was not error for the Magistrate Judge to decline to follow Shelton and permit the deposition of Mr. Godlewski to proceed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Court notes that it is not clear whether the Eighth Circuit itself would apply Shelton in this case, inasmuch as it has held that the Shelton rule applies to depositions of counsel in a particular case regarding his or her knowledge about that case; it does not apply to depositions regarding an attorney's knowledge of other matters, such as previous litigation involving the same client. Pamida, Inc., 281 F.3d at 730. In this case, it appears that Bard wishes to depose Mr. Godlewski regarding his prosecution of patents other than the one at issue in this case; further, the extent of Mr. Godlewski's role as counsel for Cook in this litigation is not entirely clear to the Court. He is not counsel of record in this court, and the parties' briefs do not paint a clear picture of his involvement in this case thus far.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

The Court wishes to stress, however, that this ruling should in no way be read as creating an open season on deposing opposing counsel. Such depositions will be appropriate in rather limited circumstances, and counsel should think carefully before noticing such a deposition. While the Court generally will not prohibit such depositions preemptively--absent, as the magistrate judge held, some showing that the impetus behind the deposition request is harassment--the Court will be vigilant in utilizing all available sanctions provisions if, in retrospect, it is apparent that the deponent had so little relevant, non-privileged information that the deposition was no more than a waste of everyone's time.

ENTERED this 18 day of SEPTEMBER 2003.

Sarah Evans Barker, Judge

United States District Court

Southern District of Indiana

*1998 U.S. Dist. LEXIS 8839, \*; Fed. Sec. L. Rep. (CCH) P90,238*

RICHARD MORALES, Plaintiff, -against- EXECUTIVE TELECARD, LTD. and NETWORK DATA SYSTEMS, LTD., Defendants.

95 Civ. 10202(KMW)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1998 U.S. Dist. LEXIS 8839; Fed. Sec. L. Rep. (CCH) P90,238

June 11, 1998, Decided
June 12, 1998, Filed

**DISPOSITION:** [*1] Plaintiff's motion for summary judgment [doc. no. 13] granted as to liability. Plaintiff's motion for summary judgment [doc. no. 13] denied without prejudice as to the quantum of damages.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff shareholder brought an action pursuant to § 16(b) of the Securities Exchange Act of 1934 (Act), 15 U.S.C.S. § 78p(b), to recover short-swing profits realized by defendant corporation. The shareholder filed a motion for summary judgment.

**OVERVIEW:** The shareholder owned some of defendant communication company's securities. The shareholder brought an action against the corporation to recover short-swing profits realized by the corporation in its purchases and sales of the communication company's securities. The shareholder filed a motion for summary judgment. The court granted the shareholder's motion for summary judgment as to liability. The court reasoned that the only reason summary judgment would not be granted was if the action was filed outside the applicable statute of limitations. The court held that the corporation failed to disclose the short-swing profits realized from its purchase and sale of securities of the communication company as mandated under 15 U.S.C.S. § 78p. Because the corporation failed to make the necessary disclosures, the two year statute of limitation governing the shareholder's action was equitably tolled, and, therefore, all of the shareholder's claims were timely. The court denied the shareholder's summary judgment motion on the issue of the quantum of damages.

**OUTCOME:** The court granted the shareholder's motion for summary judgment as to the corporation's liability for violation of the Securities Exchange Act of 1934. The court denied without prejudice the shareholder's motion for summary judgment as to the quantum of damages.

**CORE TERMS:** limitations period, disclosure, short-swing, summary judgment, shareholder, two-year, insider, last date, equitable tolling, timely filed, realized, accrued, notice, beneficial owner, common stock, stock, genuine issue of material fact, summary judgment motion, statute of limitations, functional equivalent, per share, non-moving, profited, calendar, tolling, issuer, outstanding, disclosing

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Burdens of Production & Proof 🖼

Civil Procedure > Summary Judgment > Summary Judgment Standard 🖼

*HN1* On a motion for summary judgment, a court cannot try issues of fact; it can only determine
⤓ whether there are issues to be tried. To prevail on a motion for summary judgment, the moving party, therefore, must show that there are no such genuine issues of material fact
to be tried and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P.

to be tried and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, which includes identifying the materials in the record that it believes demonstrate the absence of a genuine issue of material fact. Once a motion for summary judgment is made and supported, the non-moving party must set forth specific facts that show that there is a genuine issue to be tried. Although a court considering a motion for summary judgment must view all evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in that party's favor, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. If, based on the submissions to the court, no rational fact-finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate.  More Like This Headnote

Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Directors, Officers & Principal Stock

Governments > Legislation > Statutes of Limitations > Time Limitations 📖

**HN2** Section 16(b) of the Securities Exchange Act of 1934 permits a shareholder or corporation
⬇ to maintain an action against any director, officer, or beneficial owner of more than 10 percent of any class of outstanding shares (a "statutory insider") who profits from short-swing transactions in that corporation's securities. A short-swing transaction is any purchase and sale, or any sale and purchase, of any equity of such issuer within any period less than six months. 15 U.S.C.S. § 78p(b). A suit to recover such profits may be brought by the owner of any security of the issuer, but no such suit shall be brought more than two years after the date such profit was realized. 15 U.S.C.S. § 78p(b).  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Directors, Officers & Principal Stock

Governments > Legislation > Statutes of Limitations > Time Limitations 📖

**HN3** The period of limitations begins running under § 16(b) of the Security Exchange Act of
⬇ 1934 on the date the short-swing profit is realized. 15 U.S.C.S. § 78p(b).  More Like This Headnote
| *Shepardize:* Restrict By Headnote

**COUNSEL:** For RICHARD MORALES, plaintiff: David Lopez, Esq., Southampton, NY.

For EXECUTIVE TELECARD, LTD., defendant: Steven Altman, Ziegler, Ziegler & Altman, New York, NY.

For NETWORK DATA SYSTEMS, LTD., defendant: Leon Friedman, Leon Friedman, New York, NY.

**JUDGES:** Kimba M. Wood, United States District Judge.

**OPINIONBY:** Kimba M. Wood

**OPINION:** MEMORANDUM OPINION and ORDER

WOOD, U.S.D.J.

Plaintiff brings this action pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to recover short-swing profits realized by defendant Network Data Systems, Ltd. ("Network") through its purchases and sales of securities of defendant Executive Telecard, Ltd. ("Executive"). Plaintiff moves for summary judgment on liability. For the reasons set forth below, the Court grants plaintiff's motion for summary judgment in part and denies it in part without prejudice.

I. Background

Plaintiff initially moved for summary judgment on liability and damages. Concurrently with the filing of **[*2]** plaintiff's reply papers, with the Court's endorsement, the parties stipulated to modify the scope of plaintiff's summary judgment motion to reserve all issues concerning damages to trial or further proceedings. Accordingly, plaintiff's summary judgment motion is restricted to liability, an issue in the circumstances of this case that principally relates to equitable tolling of the two-year limitations period under § 16(b), 15 U.S.C. § 78p(b).

Plaintiff is a shareholder of Executive. At the times of the various trades that are the subject of this suit, Network was a beneficial owner of more than ten percent of the outstanding shares of common stock of Executive, (Pl. 3(g) P 4); shares in Executive are publically traded. (Id. P 3.) William V. Moore was both the Chairman and President of Network during all the trades that are the subject of this suit and the Chief Executive Officer and President of Executive until December 4, 1994. (Pl. (3) P 3; Network 3(g) P 3.)

Network purchased shares of Executive common stock in eighteen different transactions between May 28, 1993 and June 1, 1994. (Pl. 3(g) P 6.) In a series of over one hundred transactions between March 13, 1993, and March **[*3]** 31, 1995, Network sold shares of Executive common stock, each resulting in a profit for Network. (Id. P 7.) The following is a complete list of the public disclosures of these transactions that defendants state they made. First, in a Form 10-Q filing dated August 12, 1993, Executive reported that "in a private placement, [it] sold 200,000 shares of its common stock to Network Data Systems, a related party, for SF 1,985,618 ($ 1,400,000)." (Friedman Aff. Exh B. at 12.) Second, Network filed two Form 144s, disclosing that Network had sold a total of 200,000 shares in four separate transactions on March 23, 1993, April 23, 1993, June 8, 1993, and June 10, 1993. (Network Memo. at 14.) Third and finally, Network filed a Form 4 for its sale of Executive stock on March 29, 1995. Plaintiff commenced this suit on December 4, 1995.

## II. Discussion

### A. Summary Judgement Standard

**HN1** On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried." Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987) (citations and internal quotation marks omitted). To prevail on a motion for summary judgment, **[*4]** the moving party therefore must show that there are no such genuine issues of material fact to be tried, and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Citizens Bank v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," which includes identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. Once a motion for summary judgment is made and supported, the non-moving party must set forth specific facts that show that there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Although a court considering a motion for summary judgment must view all evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in that party's favor, Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir. 1993), the nonmoving **[*5]** party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If, based on the submissions to the court, no rational fact-finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. See Anderson, 477 U.S. at 250.

### B. Section 16(b) of the Securities Exchange Act of 1934

**HN2** "Section 16(b) permits a shareholder or corporation to maintain an action against any director, officer, or beneficial owner of more than 10 % of any class of outstanding shares (a "statutory insider") who profits from short-swing transactions in that corporation's securities."

statutory insider ) who profits from short-swing transactions in that corporation's securities. Tristar Corp. v. Freitas, 84 F.3d 550, 552-53 (2d Cir. 1996), cert. denied, ___ U.S. ___, 138 L. Ed. 2d 1012, 117 S. Ct. 2508 (1997) (citing 15 U.S.C. § 78p(b)). A short-swing transaction is "any purchase and sale, or any sale and purchase, of any equity of such issuer . . . within any period less than six months." 15 U.S.C. § 78p(b); Tristar, 84 F.3d at 553. A suit to recover such profits may **[*6]** be brought by the owner of any security of the issuer, 15 U.S.C. § 78p(b), Tristar, 84 F.3d at 553; "but now such suit shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b); Tristar, 84 F.3d at 553; Whittaker v. Whittaker Corp., 639 F.2d 516, 527 (9th Cir. 1981).

The Second Circuit Court of Appeals has described the disclosure requirements under this section:

> Section 16(a) provides a mechanism for facilitating the recovery of short-swing profits by requiring statutory insiders to disclose any change in ownership "within ten days after the close of each calendar month" in which such change occurs. [15 U.S.C.] § 78p(a). That disclosure is made via a Form 4 (filed with the Commission and made publicly available, see 17 C.F.R. § 240.16a-3(a) (1995)) which sets forth the insider's name, the date of the transaction, the number of shares sold or bought and the price per share. See Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 56 Fed. Reg. 7242, 7278-81 (Feb. 21, 1991) (instructions for Form 4). Where the requirements of section 16(a) are met, the corporation or shareholder **[*7]** may determine easily and quickly whether any statutory insider has profited from a short-swing transaction by examining the Form 4s filed each month with the Commission. The corporation or shareholder may then use the Form 4s to establish liability in an action under section 16(b). Because the "statute imposes liability without fault within its narrowly drawn limits," Foremost-McKesson, Inc. v. Provident Secs. Co., 423 U.S. 232, 251, 96 S. Ct. 508, 519, 46 L. Ed. 2d 464 (1976), recovery in such actions "is virtually automatic." Whittaker, 639 F.2d at 522.

Tristar, 84 F.3d at 553. In the instant case, the only issue which could prevent the Court finding the defendants liable is whether the two-year limitations period had run on certain of the subject transactions.

C. Tolling of the Section 16(b) Limitations Period

**HN3**"The period of limitations begins running under section 16(b) on the 'date [the short-swing] profit was realized'" Id. (quoting 15 U.S.C. § 78p(b)). A beneficial owner is required to make Form 4 disclosure of transactions "within ten days after the close of each calendar month, if there has been a change in such ownership during such month." **[*8]** 15 U.S.C. § 78p(a). Thus, a shareholder or corporation "could be deprived of notice that a cause of action has accrued for up to 40 days." Tristar, 84 F.3d at 553 n.1. Because this suit was commenced on December 4, 1995, defendants could conceivably argue that plaintiff's claims are time-bared only as to transactions in which the short-swing profit was realized prior to December 4, 1993. As to these transactions, plaintiff argues that Network did not, and still has not has not, filed a Form 4 disclosing their short-swing transaction in Executive's stock. As a result of this failure to meet the disclosure requirements of § 16(a), plaintiff argues that the two-year statute of limitations in § 16(b) has been tolled for a sufficient period such that all its claims are timely. Network does not dispute that it did not file a Form 4 for any of its 1993 transactions (or for that matter any of its 1994 transactions) in Executive stock. Rather, Network argues that in Tristar the Second Circuit Court of Appeals rejected the rule that the failure to disclose short-swing transactions on a Form 4 has a tolling effect on the two-year limitations period, and that its disclosures on the **[*9]** Form 10-Q and Form 144's were sufficient to give notice of these transactions. Neither of defendant Network's arguments have merit.

In Tristar, the Second Circuit Court of Appeals disagreed with the rule that the limitations period in

in Tristar, the Second Circuit Court of Appeals disagreed with the rule that the limitations period in § 16(b) "restarts the two-year limitations period on the date that the (untimely) Form 4s are filed." Id. at 553. Instead, the Tristar court held that under § 16(b) the statute of limitations runs from the time the claim accrued until the last date that the defendants could have timely filed their Form 4s; "that any suspension of the limitations period began on [the last date the Form 4s could have been timely filed] and continued until the date on which the Form 4s were actually filed; and that the remaining limitations period of two years [less number of days between the action's accrual and the last date for timely filing Form 4s] began running on that date." Id. at 553-44.

Because of the factual circumstances present in Tristar, the Second Circuit did not have to decide whether the § 16(b) limitations period is subject to equitable tolling. Id. at 551, 554. However, the court's reasoning does not support defendant's [*10] position that the Tristar court rejected equitable tolling of the § 16(b) limitations period. To the contrary, Tristar strongly suggests, in what the Tristar court called its holding, that while the limitations period runs from the date the claim accrued to the last date on which a Form 4 could timely be filed, if a Form 4 is not timely filed, then the limitations period is suspended from the date the Form 4 was due until it was actually filed, when the remaining limitations period begins to run. Id. at 553-54.

Under these principles, because Network still has not filed its Form 4s for any of the 1993 transactions, (Pl. 3(g) P 8; Network 3(g) P 9), the Court finds that the limitations period for these transaction could have run for at most 40 days, that is, from the realization of short-swing profits on the 1st of the month until the 10th of the following month when the Form 4 is due. Id.; 15 U.S.C. § 78p(a). Because 40 days is less than two years, all of plaintiff's claims as to the transactions in 1993 are also timely.

In its effort to resist this conclusion, Network argues that Executive's filing a Form 10-Q, and Form 144's serves the same purpose as filing [*11] a Form 4, and therefore should have the same legal effect. These contentions have no merit. First, defendants provide no support for the proposition that where, as here, a specific form of disclosure is required by both statute and regulation, that disclosure through other means should satisfy their disclosure duties for the purposes of the limitations period. Indeed, "if insiders could insulate their transactions from the scrutiny of outside shareholders by failing to file § 16(a) reports and waiting for the two year time limit to pass, then Congress' creation of these shareholders' derivative suits would be nullified." Whittaker, 639 F.2d at 528.

Second, neither a Form 144 nor a Form 10-Q is the functional equivalent of the Form 4. The Form 144 is submitted to comply with the Securities and Exchange Commission's ("SEC") Rule 144 which "requires that certain sales by 'control' persons be reported to the SEC in advance." Whiting v. Dow Chem. Co., 523 F.2d 680, 683 n.4. (2d Cir. 1975). The SEC's Form 144 does not require disclosure of the price per share for either the purchase or sale of securities, (Moore Aff. Exh A); nor does Form 144 required that transactions be reported [*12] in an individualized manner to allow a shareholder to determine whether some, any or all as discrete trades that match to one or more purchases within six months. (Id.) Form 144 disclosure simply does not provide the same relevant information as Form 4. Further, the SEC's Official Summary of Insider Transactions does not report the results of Form 144 disclosures. Network's argument that the Court should treat Form 10-Q disclosure as satisfying the requirements of Form 4 disclosure is even less plausible. Form 10-Qs are only filed quarterly, 17 C.F.R. § 240.13a-13(a). These forms are thus not structured to give shareholders the direct, timely notice of short-swing transactions that the Form 4 provides. See Tristar, 84 F.3d at 553 ("Where the requirements of section 16(a) are met, the corporation or shareholder may determine easily and quickly whether any statutory insider has profited from a short-swing transaction filed each month with the Commission.") To allow either the Form 144 or the Form 10-Q disclosures to re-commence the § 16(b) limitations period would thwart the statutory and regulatory goals of ensuring that shareholders have prompt and effective notice of short-swing [*13] profits. For these reasons, the Court rejects Network's suggestion that its Form 10-Q and/or Form 144 disclosures should be treated as the functional equivalent of Form 4 disclosure for the purpose of § 16(b) limitations period. Accordingly, the Court finds that the two-year limitations period for § 16(b) claims does not bar any of plaintiff's claims. Because the timeliness of plaintiff's claims is the only issue which might have prevented granting summary judgment in favor of plaintiff as to liability, the Court grants summary judgment in favor of

judgment in favor of plaintiff as to liability, the Court grants summary judgment in favor of plaintiff as to liability.

III. Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [doc. no. 13] as to liability. The Court denies without prejudice plaintiff's motion for summary judgment [doc. no. 13] as to the quantum of damages. The parties are directed to submit a revised scheduling order by June 18, 1998, which order sets this case as ready for trial on damages on or before September 7, 1998.

SO ORDERED.

Dated: New York, New York

June 11, 1998

Kimba M. Wood

United States District Judge

*1990 U.S. Dist. LEXIS 20117, ***

ROHM AND HAAS COMPANY, Plaintiff, v. BROTECH CORPORATION, Defendant.

Civil Action No. 90-109-JRR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1990 U.S. Dist. LEXIS 20117

September 14, 1990, Decided

**DISPOSITION:** **[*1]** The motion will be granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff company filed a motion to compel discovery responses from defendant corporation pursuant to Fed. R. Civ. P. 37(a) in a patent litigation.

**OVERVIEW:** The court held that there was no evidence of an express agreement between the parties that contemplated corporation's untimely responses to company's discovery requests. The court held that the record did not demonstrate good cause for corporation's conduct. The court held that corporation failed to comply with an order of the court, and thus corporation had waived all but its confidentiality objections which were untimely filed. The court addressed various specific interrogatories to which corporation had made objection and ordered corporation to respond fully. Even if it did not find waiver, the objections interposed by defendant were clearly inadequate. The court held that company was awarded its reasonable costs and attorney's fees incurred in connection with its motion to compel.

**OUTCOME:** The motion to compel was granted.

**CORE TERMS:** discovery, interrogatory, protective order, patent, confidentiality, infringement, waived, good cause, express agreement, correspondence, macroporous, infringing, motion to compel, untimely, relevancy, attorney-client, appropriately, time to respond, subject matter, outstanding, responded, upcoming, failure to timely, work product, non-responding, nonresponsive, recipients, advisory, answered, excused

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Disclosure & Discovery > Privileged Matters 🔄

Civil Procedure > Disclosure & Discovery > Relevance 🔄

**HN1** The scope of discovery is defined by Fed. R. Civ. P. 26(b)(1), which provides in relevant part: Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Written broadly, the key phrase in this definition "relevant to the subject matter involved in the pending action" has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. More Like Th

Civil Procedure > Disclosure & Discovery > Relevance 🔄

**HN2** Consistently with the notice pleading system established by the rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of

fact-oriented issues may arise during litigation that are not related to the merits. The appellate court likewise has construed liberally and with common sense the requirement of relevancy, rather than measure relevancy by the precise issues framed by the pleadings or limited by other concepts of narrow legalisms. Thus, discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing on the subject matter of the action. More Like This Headnote

Civil Procedure > Discovery Methods > Interrogatories

**HN3** In keeping with the spirit of Fed. R. Civ. P. 26(b), Fed. R. Civ. P. 33(b) provides that interrogatories may relate to any matters which can be inquired into under R. 26(b). Fed. R. Civ. P. 33(a) requires the party upon whom the interrogatories have been served to serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories. The advisory notes to the 1970 Amendment (which extended the time to respond to interrogatories from fifteen days for answers and ten days for objections to the thirty days now in place) suggest that failure to object in a timely fashion may constitute a waiver of the objections. This reflection has since been embraced and expanded by the courts, which generally hold that untimely objections to interrogatories or document production requests are waived, even if the information or material sought is privileged. More Like This Headnote

Civil Procedure > Discovery Methods > Motions to Compel

**HN4** Since 1970, Fed. R. Civ. P. 37(d) has expressly provided that the failure to timely object may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Fed. R. Civ. P. 26(c). More Like This Headnote

Civil Procedure > Discovery Methods > Interrogatories

**HN5** Although defendant should not be required to enter upon extensive independent research in order to acquire requested information", defendant is obligated to provide by way of answers to interrogatories the relevant facts readily available to it even if answering the interrogatories will require the objecting party to expend some time, effort and expense. More Like This Headnote

Civil Procedure > Sanctions > Discovery Misconduct

**HN6** Fed. R. Civ. P. 37(a)(4) provides that if a motion to compel is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust. More Like This Headnote

**COUNSEL:** Rudolf E. Hutz, Esquire, N. Richard Powers, Esquire and Jeffrey B. Bove, Esquire, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware, counsel for plaintiff. Of Counsel: William E. Lambert, III, Esquire of Rohm and Haas Company, Philadelphia, Pennsylvania.

Josy W. Ingersoll, Esquire and Jan Jurden, Esquire, of Young, Conaway, Startatt & Taylor, Wilmington, Delaware, counsel for defendant. Of Counsel: Herbert B. Keil, Esquire, Gerald H. Bjorge, Esquire and Cynthia L. Foulke, Esquire, of Keil & Weinkauf, Washington, D.C.; Paul R. Rosen, Esquire and Niels Korup, Esquire, of Spector Gadon & Rosen, P.C., Philadelphia, Pennsylvania.

**JUDGES:** ROBINSON

OPINIONBY: SUE L. ROBINSON

OPINIONBY: SUE L. ROBINSON

OPINION: MEMORANDUM OPINION

Dated: September 14, 1990

Wilmington, Delaware

ROBINSON, U.S. Magistrate

At issue in this patent litigation is a motion to compel discovery responses from defendant Brotech Corporation ("Brotech") filed by plaintiff Rohm and Haas Company ("RH") pursuant to Fed.R.Civ.P. 37(a). (Docket Item, "D.I.", 11) By Order dated July 23, 1990 (D.I. 15), the matter was referred to the United States Magistrate for disposition pursuant to 28 U.S.C. § 636 [*2] (b)(1)(B). Briefing was completed and a hearing held on August 8, 1990. For the reasons stated, the motion will be granted.

PROCEDURAL BACKGROUND

On March 1, 1990, following unsuccessful negotiations, RH filed suit against Brotech, charging Brotech with infringement of four RH patents relating generally to macroporous and macroeticular ion exchange resins. n1 In its complaint, plaintiff alleges that

> commencing in 1981 and continuing thereafter up to the present time, without leave or license from Rohm and Haas, Brotech has been infringing the claims of the Rohm and Haas patents identified in paragraphs 4 through 7 above. Such infringement has involved such activities as using and/or selling products defined by the claims of the Rohm and Haas patents and/or using and/or selling products made by the processes defined by the claims of the Rohm and Haas patents.

> By reason of the aforesaid infringing acts of Brotech, Rohm and Haas has suffered damages and will continue to suffer further damages and irreparable injury, if Brotech is not enjoined from further infringement.

> The infringing acts of Brotech of which complaint is made have been carried out with full knowledge [*3] of Rohm and Haas' patent rights and in the face of Rohm and Haas' express objections thereto, and the infringing acts have been committed wilfully and wantonly by Brotech.

(D.I. 1, PP 8-10)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 See docket item 12 at 2-5 for a more detailed explanation of the patents in issue and the involved technology.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The complaint, along with interrogatories and document requests, were served on defendant on March 9, 1990. (D.I. 3) At the request of Brotech's counsel, Herbert Keil, on March 23, 1990 RH agreed in writing to extend the times for Brotech to answer the complaint to April 20, 1990 and to respond to discovery to April 30, 1990. (D.I. 18, Ex. 2) RH on April 12, 1990, sent Mr. Keil a proposed form of protective order to govern discovery "in view of the upcoming discovery response dates". (D.I. 18, Ex. 4) Mr. Keil did not respond. Thereafter, on April 18, 1990, plaintiff's counsel requested in writing an early response on Mr. Keil's views on the protective order "in anticipation of upcoming discovery". (D.I. 18, [*4] Ex. 5) Mr. Keil did not respond. On April 24, plaintiff's

or upcoming discovery. (D.I. 18, Ex. 5) Mr. Keil did not respond. On April 27, plaintiff's counsel wrote to defendant's local counsel, forwarding a formal stipulation that extended Brotech's times to answer the complaint to April 27 and to respond to discovery to May 14; the stipulation was approved by Order of this Court dated May 2, 1990. (D.I. 6) On May 7, 1990, plaintiff's counsel again wrote to Brotech's local counsel requesting a prompt reply concerning the protective order "in view of the upcoming discovery response deadline of May 14". (D.I. 18, Ex. 7) On May 8, 1990, in response to plaintiff's correspondence, Brotech's counsel forwarded its proposed form of protective order to plaintiff. No mention of the outstanding discovery requests is included in the May 8, 1990 cover letter, the only correspondence of record (aside from a letter dated May 9, 1990 regarding typographical errors contained in defendant's answer) authored by defendant prior to May 14, 1990. (D.I. 18, Ex. B) No stipulation for an extension of time was filed; no discovery responses were filed on May 14, 1990.

On May 15, 1990, plaintiff's counsel wrote to Mr. Keil noting, inter alia, that Brotech had defaulted and, thereby, had waived **[*5]** its right to object to the discovery requests. (D.I. 18, Ex. 9) On May 16, 1990, Mr. Keil responded as follows:

> As I indicated to you last Thursday [May 10, 1990], the answers to the interrogatories as well as document production and depositions must await the execution of an acceptable Protective Order. If the form of the Order submitted to us yesterday has no objectionable provisions, it will be quickly approved and the discovery will proceed as rapidly as possible. As you must realize, we are a small firm with limited personnel. It happens that our schedules are, and have been for the past two months, extremely heavy. Nevertheless, we are doing our best to provide the discovery to you to which you are entitled as soon as is humanly possible.

(D.I. 18, Ex. 10)

By letter dated May 17, 1990, plaintiff's counsel requested a Fed.R.Civ.P. 16(b) conference with the Court "to resolve several discovery and scheduling problems . . .", referring to plaintiff's May 15 letter to Mr. Keil and defendant's failure to timely respond to RH's outstanding discovery requests. Defendant's local counsel responded to plaintiff's request by letter dated May 18, 1990 as follows:

> Responses **[*6]** to Rohm and Haas' discovery, due May 14, have not yet been filed, the main stumbling block being the form of protective order, as described in the attached copy of a letter from Mr. Keil to Mr. Bove. Until the protective order can be finalized, Brotech will be unable to produce the sensitive and highly confidential files requested nor to otherwise respond to discovery. We had thought there was an understanding between us on this point. We are making every effort to resolve our differences as to the form of the protective order, but if need be we will apply to the Court concerning an extension of our time to respond to discovery until the matter of the protective order can be resolved.

(Both the May 17 and May 18 letters are undocketed items in the Court's file; emphasis added)

The next relevant correspondence of record are several letters dated May 21, 1990 written by Mr. Keil's co-counsel, Niels Korup, to the Court and to plaintiff's counsel, respectively. As to the former, the passages of concern to us include the following representations:

> I have communicated with plaintiff's counsel, Jeffrey B. Bove, Esquire, today in an attempt to reach a finalization of a stipulated **[*7]** protective order, or at least minimize the number of contested questions to be submitted to the Court. Although Mr. Bove has not in any way changed his position relative to Mr. Hutz' letter to the Court of May 17, it is my sense that he and I may in fact be able to moot the points raised therein.

(This letter is an undocketed item in the Court's file; emphasis added) In his May 21, 1990 letter to plaintiff's counsel, Mr. Korup confirms a telephone conversation of that date with plaintiff's counsel:

> I do not agree with several of the statements made in your letter to Herb Keil of May 15 and Mr. Hutz' letter to the Court of May 17. However, I do not think any useful purpose will be served at the present time by starting to take positions on the record. I would prefer, since you indicated to me earlier today that you would be taking your position in those letters under consideration, work with you in an atmosphere of cooperation rather than adverse attitude. I do reserve defendant's rights to refute those statements, if necessary, and must so inform the Court, but at this point I would rather expend my energies, and yours, in seeking a solution.

(D.I. 18, Ex. 11) **[*8]**

By letter dated May 23, 1990, plaintiff's counsel responded to the representations made by Mr. Korup in his May 21, 1990 correspondence:

> While Rohm and Haas considers all objections to discovery waived, since we initiated the concern for confidentiality, we will abide by our agreement to address confidentiality unless Brotech wishes to consider the confidentiality objection waived to the same extent as the other objections.

(D.I. 18, Ex. 12) Also mentioned in the May 23 letter is plaintiff's reiterated suggestion that discovery responses be provided "on an outside attorney's eyes only basis as an interim measure in order to avoid delay". The Court entered an Order on May 25, 1990 incorporating plaintiff's suggestion. (D.I. 9(A)(1)(a))

Plaintiff's May 23, 1990 letter was followed up by correspondence dated May 24, May 30, and June 1, 1990, reiterating plaintiff's position that its discovery was outstanding and that defendant had thus waived its right to object to such. (D.I. 18, Exs. 13, 15, 18) By the June 1, 1990 letter, plaintiff's counsel memorialized an agreement among the parties that defendant would "file its discovery responses by a reasonable date certain **[*9]** (you [Mr. Korup] suggested June 15, 1990), and we would then study the sufficiency of those responses. . . ." (D.I. 18, Ex. 18)

Defendant in fact filed a notice in this Court on June 15, 1990 indicating that its responses to plaintiff's first set of interrogatories and first requests for production of documents were served on plaintiff. (D.I. 10) Defendant produced a total of seventy (70) pages of documents in response to plaintiff's requests, all of which documents are "publicly available"; i.e., no highly confidential files were produced after all. (D.I. 12 at 9 n.1; D.I. 24 at 96) In its response to plaintiff's first set of interrogatories, defendant interposed various objections. The essence of defendant's objections to plaintiff's discovery requests is stated as follows by defendant:

> The Complaint is stated in such bare-bones, general terms as to all elements of Brotech's infringement that, in effect, it states nothing more than that Brotech is guilty of infringement because it sells products which compete with those of R&H. If R&H is in possession of any facts to justify a belief that Brotech is engaging in infringing activity of any kind, those facts are not alleged **[*10]** or even reflected in the Complaint.

> It is apparent R&H's discovery requests, which are as unfocused as the Complaint, and clear from its Motion to Compel, that R&H is seeking sweeping discovery in the hope of uncovering facts to make a case which will somehow or other fit under the vague claims of the Complaint, which R&H was unable to particularize when this action was instituted. R&H's interrogatories shift the burden of providing facts to state R&H's

instituted. R&H's interrogatories shift the burden of providing facts to state R&H's claims of infringement with any degree of specificity to the defendant.

R&H is here attempting to conduct sweeping discovery as to all possible counts of infringement of any of the claims of the four patents by any of the macroporous products of Brotech. To judge from the Complaint and R&H's interrogatories, R&H is not seeking information to prove its case, but to find out whether it has a case to prove in the first place. Brotech respectively submits that this is an abuse of the Federal Rules which this Court should not permit. This abuse is the ground for Brotech's objection to several of R&H's interrogatories and document requests. . . .

(D.I. 13 at 6-7)

**LEGAL STANDARDS**

*HN1* The scope of discovery is defined by Fed.R.Civ.P. **[*11]** 26(b)(1), which provides in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Written broadly,

> the key phrase in this definition - "relevant to the subject matter involved in the pending action" - has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. See Hickman v. Taylor, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 . . . (1947). *HN2* Consistently with the noticepleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Hickman v. Taylor, supra, at 500-501. . . . Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits. **[*12]**

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978).

This Court likewise has "construed liberally and with common sense" the requirement of relevancy, rather than measure relevancy

> by the precise issues framed by the pleadings or limited by other concepts of narrow legalisms. Thus, discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing on the subject matter of the action.

LaChemise LaCoste v. Alligator Company, Inc., 60 F.R.D. 164, 170-71 (D.Del. 1973). See also Marshall v. Electric Hose & Rubber Company, 68 F.R.D. 287, 295 (D.Del. 1975).

HN3⊕In keeping with the spirit of Rule 26(b), Fed.R.Civ.P. 33(b) provides that "interrogatories may relate to any matters which can be inquired into under Rule 26(b). . . ." Rule 33(a) requires "the party upon whom the interrogatories have been served [to] serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories. . . ." The advisory notes to the 1970 Amendment (which extended the time to respond [*13] to interrogatories from fifteen days for answers and ten days for objections to the thirty days now in place) suggest that failure to object in a timely fashion may constitute a waiver of the objections. This reflection has since been embraced and expanded by the courts, which generally hold that untimely objections to interrogatories or document production requests are waived, even if the information or material sought is privileged. See, e.g., In Re United States, 864 F.2d 1153, 1156 (5th Cir. 1989), reh'g denied en banc 869 F.2d 1487 (5th Cir. 1989); Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981); Scott v. Arex, Inc., 124 F.R.D. 39, 41-42 (D.Conn. 1989); Turick v. Yamaha Motor Corp., 121 F.R.D. 32, 36 (S.D.N.Y. 1988); Brock v. Gerace, 110 F.R.D. 58, 62 (D.N.J. 1986); Fretz v. Keltner, 109 F.R.D. 303, 309 (D.Kan. 1985); United States v. 58.16 Acres of Land, 66 F.R.D. 570, 572 (E.D.Ill. 1975). This has long been the rule in this [*14] Court. Rohm and Haas Co. v. NL Chemicals, Inc., C.A. No. 88-408-JRR (D.Del. August 13, 1990) (slip op. at 23); Lunn v. United Aircraft Corp., 25 F.R.D. 186, 188 (D.Del. 1960). Moreover, HN4⊕since 1970, Fed.R.Civ.P. 37(d) has expressly provided that the failure to timely object "may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c)." Some courts, however, indicate that a non-responding party's waiver may be excused if "good cause" can be demonstrated. See, e.g., Scott v. Arex, Inc., 124 F.R.D. at 41-2; and Brock v. Gerace, 110 F.R.D. at 62. The "good cause element" apparently has been applied sparingly, e.g., in In Re United States, the non-responding party, the U.S. Government, was statutorily prohibited from disclosing the requested material, 864 F.2d at 1156, and in Thompson v. F.W. Woolworth Co., 508 F.Supp. 520 (N.D.Miss. 1980), good cause for belated discovery responses was found where the defendant had asserted [*15] lack of personal jurisdiction.

## DISCUSSION

Plaintiff RH bases its motion to compel on two grounds: 1) Brotech waived its right to interpose objections to PH's discovery requests; and 2) Brotech failed to respond properly to RH's requests.

Waiver

In connection with plaintiff's first ground for relief, defendant Brotech argues in its brief that it

> had every good cause not to file its discovery responses. First and foremost because, by virtue of counsel's agreement, they were not due until a protective order was in place. Counsel's agreement to condition Brotech's responses on a satisfactory protective order necessarily and logically included an extension while that protective order was being negotiated.

(D.I. 13 at 15) Likewise, at oral argument defendant's counsel declared:

> I have made the statement, I made it to the Court, I stand by it, there was an express agreement between the parties' counsel that not until the protective order issued, which was very important - it is important for the reasons that I have told the Court about Brotech's trade secrets - not until that was in place should answers be filed to the interrogatories.

(D.I. 24 at 63-4) **[*16]** Defendant's counsel subsequently conceded, however, that there was no "express agreement" in place at the time of the May 14, 1990 due date.

> Whatever the reason, I took over on the 21st of May. I could see we weren't really getting anywhere. I called Mr. Bove. I discussed with Mr. Bove, what are we going to do about it? How are we trying to get this protective order worked out? We also discussed discovery. And I am stating to this Court here and now, and I have given this Court my affidavit, that in the first conversation that I had with Mr. Bove, which was indeed a fairly cordial conversation . . . , we would try to see if we could work out what had not been worked out before. And I state to this Court that Mr. Bove agreed with me that we were going to make a fresh start and as part of that we would get the protective order done, and once that was done the answers to discovery would be provided. . . .

> What I am telling the Court here in terms of whether there was a waiver or not is that when I started, . . . regardless of what had happened before, which I was not directly a party to in person - of course Brotech was . . . when Mr. Bove and I started on a fresh start, **[*17]** there was an agreement, which he went back on, to coordinate the protective order and the answers. . . .

(D.I. 24 at 68-9, 72-3) In further support of its position that there was "an express agreement between the parties to link discovery and the protective order", defendant refers the Court to paragraph 12 of the protective order submitted by the parties:

> This Protective Order shall be without prejudice to the right of any party to oppose production of any information for lack of relevance or any other ground other than the mere presence of confidential information. The existence of this protective Order shall not be used by any party as a basis for discovery that is otherwise not proper under the Federal Rules of Civil Procedure.

(D.I. 18 at 16) Defendant interprets this language as follows: "It made absolutely no sense in there to make provision for what should happen to Brotech's objections, be they based on relevancy or attorney/client privilege, or anything else, to provide for what should happen or not happen to those objections if we had already waived them." (D.I. 24 at 74)

In response, inter alia, plaintiff refers the Court to the absence of any evidence **[*18]** of record that an "express agreement" ever existed. Plaintiff likewise disagrees with defendant's interpretation of paragraph 12 of the protective order:

> The plain wording of this provision shows that it does not do what Mr. Korup asserts it does. The provision simply recognizes that the parties may have other objections to discovery requests in addition to confidentiality concerns, and that the parties do not give up the right timely to assert those other objections merely because they have solved the confidentiality problem by agreeing to the protective order.

(D.I. 18 at 16)

Having reviewed the record before me, I see no evidence of an express agreement between the parties that contemplated Brotech's untimely responses to RH's discovery requests. Indeed, counsel's representations at oral argument are belied by the correspondence submitted to the Court on May 21, 1990: "Although Mr. Bove has not in any way changed his position relative to Mr. Hutz' letter to the Court of May 17. . . ."

Nor does the record demonstrate "good cause" for defendant's conduct. Unlike the cases cited by

defendant, which involved jurisdictional and statutory obstacles to the parties' compliance, **[*19]** defendant cites merely to "the totality of the parties' give-and-take in their efforts to resolve their differences" over the proposed protective order. Finally, paragraph 12 of the agreed upon protective order does not accommodate defendant's strained interpretation. The fact that the parties were discussing the terms of a protective order focused on confidentiality concerns n2 does not excuse defendant's failure to respond to the nonconfidential aspects of the discovery requests or to formally object on grounds of confidentiality.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The Fed.R.Civ.P. 37(d) exception has no application instantly because defendant had not applied for a protective order.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In sum, before the Court on May 14, 1990 was a formal stipulation, executed by the parties and approved by the Court, extending defendant's time to respond to RH's discovery requests. Regardless of defendant's motivation for not timely responding, the fact remains that defendant failed to comply with an Order of the Court. For that reason alone, I find that defendant **[*20]** has waived all but its confidentiality n3 objections untimely filed on June 15.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 See D.I. 18, Ex. 12.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**Propriety of Objections**

Even if I did not find waiver, the objections interposed by defendant are clearly inadequate. Under the principles of notice pleading and liberal discovery, I regard plaintiff's interrogatories and document production requests as generally germane and proper. n4 Therefore, defendant cannot simply claim noninfringement and limit discovery according to its view of the case. See, e.g., Powerlock Systems, Inc. v. Duo-Lok, Inc., 54 F.R.D. 578, 579 (E.D.Wis. 1972). Nor can defendant ignore the discovery parameters established by plaintiff, e.g., RH's definition of a "macroporous bead" or of "Brotech" included in its interrogatories. If defendant objects to the scope of discovery as defined by plaintiff, it is defendant's burden to inform the Court of such in its discovery responses, as opposed to filing inadequate or nonresponsive answers. See generally **[*21]** Fed.R.Civ.P. 33, advisory notes; Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D.Pa. 1980). Finally, **HN5**although defendant "should not be required to enter upon extensive independent research in order to acquire [requested] information", defendant is obligated to provide "by way of answers to interrogatories the relevant facts readily available to it . . . ," LaChemise LaCoste v. Alligator Company, Inc., 60 F.R.D. at 171, even if answering the interrogatories will require the objecting party to expend some time, effort and expense. Roesberg v. Johns-Manville Corp., 85 F.R.D. at 297.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 As noted by RH, its complaint is modeled after form 16 in the appendix of forms following the Rules of Civil Procedure. It, therefore, is legally adequate. Moreover, defendant answered the complaint and decided not to ask for a more definite statement pursuant to Fed.R.Civ.P. 12(c). (D.I. 24 at 57-8)

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

With these standards in mind, **[*22]** defendant's responses to RH's interrogatories shall be examined seriatim.

**Interrogatory One:** Brotech objects to this interrogatory on the ground that it "could not have understood RH's interrogatory to apply to each and every macroporous product sold by Brotech, since the Complaint does not in any way state that all of those products infringe RH's patents. The only way to make sense of the overbroad, general allegations of the Complaint was to read them in light of the specific claims of infringement made in [an] August 6, 1987 letter. Brotech did so, and provided the identification requested by the interrogatory." (D.I. 13 at 17-18; D.I. 24 at 77-9) Brotech chose, then, to ignore the provided definition of "macroporous bead" and respond according to its view of the case as defined by an August 6, 1987 letter not referred to by Brotech, however, in its interrogatory answer. Brotech's response is plainly unacceptable and Brotech shall be ordered to respond fully.

**Interrogatory Three:** Brotech's answer is neither responsive nor legally correct. See, e.g., Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127 (D.Del. 1986). Brotech **[*23]** shall be ordered to respond fully.

**Interrogatory Four and Document Requests Two and Three:** Defendant's objections to these discovery requests are three-fold: 1) To the extent the requested documents (promotional, technical and advertising documents) exist in RH's possession, defendant's obligation to identify and produce them is alleviated; 2) Brotech has no records of the recipients of such materials; and 3) Even if it did, such records are irrelevant.

I find the request relevant. I also find it difficult to accept that Brotech, the sole or primary function of which is to sell the products made by Purolite International Ltd. (D.I. 24 at 90-1), maintains no records of the recipients of the requested materials. Without some demonstration that defendant in fact has reviewed the records within its "possession, custody or control", as it is obligated to do under Fed.R.Civ.P. 33, its objections cannot be sustained.

**Interrogatory Five:** Insofar as this interrogatory sought nonhypothetical information, defendant has failed to respond or to appropriately claim the attorney work or attorney-client privileges. See Roesberg v. Johns-Manville Corp., 85 F.R.D. at 301-302; **[*24]** D.I. 24 at 41-2.

**Interrogatories Six and Eight:** The thrust of these interrogatories is to find out what efforts Brotech made to investigate RH's patents, not to find out what investigations were possible by way of a public search. This information is relevant. See Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1428 (Fed.Cir. 1988); Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1109 (Fed.Cir. 1986). Therefore, defendant's objection that RH has equal access to the information is nonresponsive. Moreover, Brotech has failed to appropriately claim the attorney work product and attorney-client privileges, especially if it intends to rely on opinions of counsel in its defense of a charge of wilfullness. (D.I. 24 at 99) See Smith v. Alyeska Pipeline Service Co., 538 F.Supp. 977, 979 (D.Del. 1982), aff'd 758 F.2d 668 (Fed.Cir. 1984), cert. denied 471 U.S. 1066, 85 L. Ed. 2d 499, 105 S. Ct. 2142 (1985).

**Interrogatory Nine:** Brotech has neither answered the interrogatory fully nor appropriately claimed the attorney work product or attorney-client privileges. **[*25]**

**Interrogatories Ten and Eleven:** Defendant cannot limit discovery to suit its notions of equity. The interrogatory is proper and defendant shall be ordered to respond fully.

**Interrogatory Twelve:** Brotech has failed to identify the individuals most knowledgeable concerning the basis of the response made and the identity of the requested documents. In addition, if Brotech intends to rely on prior art other than as stated in its response, it should provide the requested information.

**Interrogatory Thirteen:** Again, defendant cannot limit discovery to suit its notions of equity. The

interrogatory is proper and defendant shall be ordered to respond fully. The fact that defendant has filed a motion to bifurcate is not controlling until such time, if ever, said motion is granted.

**Interrogatory Fourteen:** Defendant's answer is unresponsive.

## SANCTIONS



Plaintiff has moved for sanctions pursuant to *HN6* Fed.R.Civ.P. 37(a)(4), which provides that if a motion to compel is granted, "the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of **[*26]** them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." Having found that defendant filed its responses in an untimely fashion and then provided inadequate answers, e.g., Cone Mills Corp. v. Joseph Bancroft & Sons Co., 33 F.R.D. 318 (D.Del. 1963), plaintiff is awarded its reasonable costs and attorney's fees incurred in connection with its motion to compel.

## CONCLUSION

The Court notes in concluding that the arguments asserted by defendant are not without merit. In the interests of the efficient and consistent administration of justice, however, defendant must "play by the rules", meaning the Federal Rules of Civil Procedure, not defendant's own rules. The record before me demonstrates that defendant has failed to do so. n5 For these reasons, plaintiff's motion to compel is granted.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 See, e.g., D.I. 24 at 57-8, 76-9, 80, 99-100.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*27]**

An Order consistent with this Memorandum Opinion shall issue contemporaneously.